746 A.2d 1108

TRIANGLE BUILDING CENTER and Kemper Insurance Company

v.

WORKERS' COMPENSATION APPEAL BOARD (LINCH).

Appeal of Malcolm R. Linch.

Supreme Court of Pennsylvania.

Argued April 27, 1999.

Decided Feb. 24, 2000.

542

Gary D. Martz, York, for Malcolm R. Linch.

Christopher C. Kain, Madison, WI, for Triangle Bldg. Ctr. and Kemper Ins. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

We allowed appeal to determine whether temporary layoff of a workers' compensation claimant from concurrent employment precludes assessment of his concurrent earnings experience within the average weekly wage calculation.

Appellant Malcom R. Linch ("Claimant") began full-time employment at R & J Industries ("R & J") in February of 1983, spreading and cutting materials for use in the assembly of apparel items in exchange for an hourly wage. In May of 1988, Claimant obtained part-time, hourly employment with Triangle Building Center ("Employer"), as an assistant yard supervisor, working between twenty-five and forty hours per week. On January 31, 1990, while working for Employer, Claimant suffered a cervical spine injury. Employer issued a

notice of compensation payable ("NCP") based solely upon Claimant's average weekly earnings from Employer in the amount of $244.15. At the time of his injury, Claimant was experiencing a period of temporary layoff from his employment with R & J, which had commenced approximately two months prior to the injury, and was receiving unemployment compensation benefits. Claimant returned to work at Triangle on February 14, 1990, and signed a final receipt on February 26, 1990. He resumed work for R & J during the second week of March, 1990, when work became available.

On May 31, 1990, Claimant again became disabled as a result of the work injury suffered on January 31st; Employer, however, did not initially reinstate total disability benefits. In September of 1990, Claimant formally requested that Employer not only reinstate benefits, but also amend the NCP to include Claimant's earnings from R & J within his average weekly wage (i.e., the earnings figure utilized as the baseline for calculating disability benefits). Employer subsequently complied, issuing a corrected NCP based upon combined average weekly wages of $548.05 ($244.15 attributable to Employer; $303.90 attributable to R & J). Claimant then received weekly benefits of $365.37, as reflected in a supplemental agreement for compensation, executed by the parties in October of 1990.

In February of 1993, however, Employer filed a petition to review compensation benefits, seeking to revert to the payment of benefits based upon Claimant's wage experience with Employer alone.[1] Employer contended that it had mistakenly agreed to the corrected NCP, as it subsequently realized that Claimant was not actually working for R & J contemporaneous with his work injury, and thus, his earnings from R & J should have been excluded from the wage calculation. Follow-

---

1. Employer filed its petition immediately after Claimant filed a petition to review medical treatment and/or billing, in which he asserted that Employer had failed to pay for reasonable and necessary medical services related to the treatment of his work injury. This petition was disposed in Claimant's favor contemporaneous with the disposition of Employer's petition, discussed below, and was not a subject of Employer's appeal.

ing two hearings, the workers' compensation judge (the "WCJ") denied the requested relief and directed Employer to continue paying Claimant based on the combined average weekly wage figure. With regard to Claimant's employment with R & J, the WCJ included the following within her findings:

> Claimant presented the testimony of Deborah Schneier, office manager for R & J Industries. Mrs. Schneier testified that Claimant was employed full time for R & J Industries as a cutter/spreader, and that he had started work for R & J Industries on February 9, 1983. Mrs. Schneier further testified that Claimant was on lay off from R & J Industries from the week ending December 2, 1989 through the week ending March 10, 1990, but that during that period of time Claimant was required to call in on a daily basis to R & J Industries to find out if there was work available for the next business day. Mrs. Schneier further testified that if a laid off employee such as Claimant did not call in two successive work days, the employee would be considered to have assumed quit [sic]. Mrs. Schneier testified that Claimant did call in on a daily basis during this period of time in order to find out about work availability for the next day, and that Claimant then did return to work for R & J Industries following the week ending March 10, 1990 through the end of May, 1990 when he had to discontinue working for R & J Industries because of his work related condition.

Based upon Mrs. Schneier's testimony, as well as similar testimony from Claimant, the WCJ concluded that "[a]t the time of his injury the Claimant had concurrent employment with R & J Industries."

On appeal to the Workers' Compensation Appeal Board (the "Board"), Employer argued that, in light of Claimant's layoff, the WCJ's findings were not supported by substantial evidence. Employer cited to the decisions of the Commonwealth Court in *Freeman v. Workmen's Compensation Appeal Bd. (C.J. Langenfelder & Son)*, 107 Pa.Cmwlth. 138, 527 A.2d 1100 (affirming the determination of the Board that a claimant was

not concurrently employed at the time of his injury, where the asserted concurrent employer had ceased doing business several weeks prior to the injury), *appeal denied,* 517 Pa. 600, 535 A.2d 1058 (1987), and *Mengel v. Workmen's Compensation Appeal Bd. (Boyer's IGA, Inc.),* 118 Pa.Cmwlth. 582, 545 A.2d 992 (1988)(holding, in a case where the asserted concurrent employer had ceased doing business approximately six months prior to the work injury, that receipt of unemployment compensation does not constitute concurrent compensation). The Board, however, distinguished *Freeman* and *Mengel* on the basis that the asserted concurrent employers in those cases had permanently ceased doing business prior to the claimant's injury; whereas Claimant was experiencing a temporary layoff from R & J. Based upon the impermanent character of the layoff, the Board, like the WCJ, concluded that Claimant's employment with R & J was ongoing at the time of his work-related injury and thus constituted concurrent employment.

The Commonwealth Court, however, reversed in an *en banc* decision. See *Triangle Building Center v. Workers' Compensation Appeal Bd. (Linch),* 711 A.2d 1109 (Pa.Cmwlth.1998).[2] The majority found that, pursuant to the controlling statute, a claimant must actually be working in the concurrent employment, in the form of performing services in exchange for valuable consideration, in order for concurrent earnings to be validly assessed in the benefits calculation. Because Claimant was receiving unemployment compensation benefits by virtue of his layoff from R & J, the majority concluded that he could not be regarded as working in concurrent employment at the time of his injury. The majority also stated:

> although Claimant maintained a relationship with [R & J] by calling in each day while he was laid off, and he arguably might be considered to have performed a service by holding himself ready for work and notifying [R & J] of that fact daily, Claimant does not assert that he received any remuneration for such service.

**2.** A three-judge panel of the Commonwealth Court had reversed the Board's decision, and Claimant sought and was granted reargument before the court *en banc.*

*Triangle,* 711 A.2d at 1112. Judge McGinley authored a dissenting opinion, in which he essentially adopted the position taken by the WCJ and the Board. This Court granted allocatur limited to the issue of whether Claimant's concurrent wages should be considered in this situation.

■ The Workers' Compensation Act [3] is remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries. *See generally Inglis House v. Workmen's Compensation Appeal Bd. (Reedy),* 535 Pa. 135, 142, 634 A.2d 592, 595–96 (1993). Pursuant to Section 306(a), total disability benefits generally are made available at a rate of sixty-six and two-thirds percent of the injured employee's wages. 77 P.S. § 511. The term "wages" means the average weekly wage of the employee, which is calculated according to the provisions of Section 309, 77 P.S. § 582. Of particular relevance to this appeal, Section 309(e) provides, *inter alia,* as follows:

> [w]here the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as earned from the employer liable for compensation.

77 P.S. § 582(e).

Employer advocates the construction of Section 309(e) adopted by the Commonwealth Court, namely, that a laid-off employee cannot be considered to be either "working" or "employed" for purposes of the statute, and a claimant who was receiving unemployment compensation benefits at the time of injury cannot be deemed to have been concurrently employed. Employer contends that consideration of concurrent earnings in these circumstances would be unfair, as it would result in an effective "doubling" of a claimant's wages, thus allowing a claimant to "earn more money on workers' compensation than he ever earned in real life." Claimant, on the other hand, argues that the particular facts and circumstances of his situation demonstrate that his employment relationship with R & J was not severed during his layoff

**3.** Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4)(the "Act").

period, and that the receipt of unemployment compensation should not foreclose a finding of concurrent employment. Claimant also directs the Court's attention to the Commonwealth Court's opinion in *Hoffman v. Workers' Compensation Appeal Bd. (Acme Markets, Inc.)*, 716 A.2d 711 (Pa.Cmwlth. 1998), a decision which post-dates the Commonwealth Court's opinion in this case, and which Employer argues was wrongly decided.

In *Hoffman*, the Commonwealth Court considered whether a claimant's seasonal employment as a full-time school bus driver could be considered concurrent employment for purposes of Section 309(e) after he suffered a work-related injury while working at a grocery store during the summer months when school was not in session. In holding that the job with the bus service company was indeed concurrent employment, the Commonwealth Court relied upon the testimony of management personnel of the bus service company indicating that: employees who are laid off over the summer by reason of the seasonal nature of the work remain listed as employees and are not terminated from the company; bus driver employees were asked in June if they intended to recommence driving the following September; and the claimant had in fact expressed his intention to drive the following fall. *Hoffman*, 716 A.2d at 713–14.

The Commonwealth Court's decision in *Hoffman* is consistent with the General Assembly's remedial purposes in establishing the present system for workers' compensation. See generally *Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown)*, 543 Pa. 484, 490, 672 A.2d 1319, 1321 (1996). The Act seeks to compensate claimants for the ongoing loss in earning capacity resulting from their injuries; therefore, some reasonable assessment must be made of claimants' pre-injury ability to generate future earnings. Section 309 directs the focus to the employee's past performance, often measured over a period of time, as the gauge for determining this future earning potential. *See* 77 P.S. § 582. For example, in the case of seasonal employees such as the claimant in *Hoffman*, the Act generally requires consideration of the employee's

total wages for the year preceding the injury, *see* 77 P.S. § 582(e); this is obviously to obtain a fair assessment which takes into account the seasonal aspect of the work. For employees such as Claimant, who are paid on an hourly basis (as well as employees whose wages were fixed by the day or by output), Section 309(d) calculated the average weekly wage by taking the most employee-favored average from wages earned in the first, second, third or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury. *See* 77 P.S. § 582(d)(repealed).[4]

■ The mechanics of the legislative scheme demonstrate the General Assembly's intention that the baseline figure from which benefits are calculated should reasonably reflect the economic reality of a claimant's recent pre-injury earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment. The Legislature ameliorated potential unfairness that might otherwise accrue to employers in this assessment by adjusting the "look back" according to the nature of the employment, *see* 77 P.S. § 582; by employing a substantial percentage-based reduction of the average weekly wages in the resulting calculation of actual benefits, *see* 77 P.S. §§ 511–512; and in the underlying trade-off between loss spreading and insulation of employers from tort liability inherent in the workers' compensation system. *See generally* 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 60.31(c), at 10–751–52 (1993).

■ We believe that the General Assembly directed inclusion of concurrent wages in the benefits computation for precisely the same reason—to create a reasonable picture of a claimant's pre-injury earning experience for use as a projec-

4. Section 309(d) was modified by the Act of June 24, 1996, P.L. 350, No. 57. The amended provision requires calculation of the average weekly wage for employees who are not paid on a weekly, monthly or yearly basis by taking the average of the average of actual wages earned on a weekly basis in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury. *See* 77 P.S. § 582(d). The effect of substituting an overall average for selection of the thirteen-week period yielding the highest wage figure is to lessen, to a degree, the employee-favored aspect of the calculation.

tion of potential future wages and, correspondingly, earnings loss.[5]  Thus, we find that, in order for an employment relationship to constitute concurrent employment for purposes of Section 309(e), the relationship must remain sufficiently intact such that the claimant's past earning experience remains a valid predictor of future earnings loss.

In both *Hoffman* and the present case, the claimants maintained this form of continuing relationship with the concurrent employer.  In *Hoffman*, the facts and circumstances demonstrated that, but for the claimant's work injury, there was a sufficient likelihood that he would have returned to his employment as a school bus driver the following fall, thus generating future wages from the concurrent employer.  *See Hoffman*, 716 A.2d at 713–14.  In the present case, the WCJ credited the evidence that: Claimant had a substantial, seven-year pre-injury work history with R & J;  Claimant experienced few temporary layoffs during his work experience;  Claimant was not terminated from the employment rolls of R & J during the period of his layoff;  Claimant was required to call in on a daily basis to maintain his employment relationship and did, in fact, call in;  and Claimant actually returned to work at R & J immediately after work again became available at the company.

These facts distinguish *Hoffman* and the present case from both *Freeman* and *Mengel*, in which the claimants lacked an ongoing employment relationship that would form the necessary connection between their past earnings and their pre-injury ability to generate future wages from the concurrent employer.[6]

5.  Notably, in *Best v. Workmen's Compensation Appeal Bd. (Nursefinders of Allentown)*, 668 A.2d 279, 281–82 (Pa.Cmwlth.1995), the Commonwealth Court determined that concurrent wages are to be calculated in the same manner as wages attributable to the employer liable for workers' compensation benefits.

6.  Employer's argument that inclusion of concurrent earnings in the benefits computation allows a claimant to "earn more money on workers' compensation than he ever earned in real life" is belied both by the mechanics of the system of computation described above and by the facts of this case.  The record discloses that, during the period prior to his layoff from R & J, Claimant typically worked forty-hour weeks,

■ As Employer emphasizes, *Hoffman* does differ from the present case in that the receipt of unemployment compensation benefits was not there in issue. It is true that the General Assembly has, to some degree, coordinated the unemployment and workers' compensation systems, particularly where benefits might otherwise overlap. *See, e.g.,* 77 P.S. § 71 (providing a credit for the receipt of unemployment compensation benefits against certain awards of workers' compensation benefits). Employer here, however, does not seek redress for overlapping benefits, but rather, urges that the receipt of unemployment compensation benefits should always preclude a finding of any ongoing employment relationship in the context of Section 309(e), no matter how apparent it may be that such earnings from the concurrent employment would contribute to a valid forecast of future earnings loss. The General Assembly, however, has not established such a categorical rule, and, in light of the relevant policies discussed above, we decline to accord the receipt of unemployment compensation benefits by virtue of a temporary layoff controlling significance in the Section 309(e) context.[7]

which generated a gross weekly earnings figure from that company of $340.00 (Claimant also testified that, in the past, he had worked up to seventy hours in a week). Claimant worked 25–40 additional hours per week with Employer, and Employer stipulated that Claimant's average weekly wages from it were $244.15. Thus, the $365.37 per week which Claimant received pursuant to the amended NCP is some $215.00 *less* than the $580 per week that Claimant actually earned during many of the weeks prior to his injury.

7. Our determination is consistent with appellate decisions in several other states. *See, e.g., Case of Sylva,* 46 Mass.App.Ct. 679, 709 N.E.2d 439, 443–44 (1999)(holding that substantial intermittent employment as a union welder constituted concurrent employment for purposes of the Massachusetts workers' compensation statute, where the employee had completed his last assignment about one month prior to his injury but remained on call); *Jacobs v. Industrial Comm'n,* 269 Ill.App.3d 444, 206 Ill.Dec. 945, 646 N.E.2d 312, 314 (1995)(holding that a claimant's employment relationship as a union sheet metal worker was not severed for purposes of "concurrent employment" under the Illinois workers' compensation statute where the employee had been laid off for several weeks prior to his injury but was subject to recall). *See generally* 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 60.31(c), at 10–751–52 (1993).

Accordingly, the order of the Commonwealth Court is reversed.

Justice NEWMAN files a dissenting opinion in which Justice ZAPPALA and Justice CASTILLE join.

NEWMAN, Justice, dissenting.

This Court granted allocatur limited to the issue of whether Malcolm R. Linch ( Claimant) met the requirement of Section 309(e) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 582(e), which provides in relevant part: "Where the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as earned from the employer liable for the compensation." I respectfully dissent from the majority's conclusion that Claimant's temporary layoff did not preclude a determination that he was concurrently employed for the purpose of the average weekly wage calculation.

Claimant recognizes that the Commonwealth Court has held that a claimant must actually be working for two or more employers at the time of his injury in order for his workers' compensation benefits to be determined according to Section 309(e). In *Freeman v. Workmen's Compensation Appeal Board (C.J. Langenfelder & Son)*, 107 Pa.Cmwlth. 138, 527 A.2d 1100, *appeal denied*, 517 Pa. 600, 535 A.2d 1058 (1987), the claimant sustained an injury at C.J. Langenfelder & Son two weeks after losing his job at A.J. Picone, which went out of business. The Commonwealth Court noted that Section 309(e) is written in the present tense ("Where the employe is working under concurrent contracts . . . ."), thus rendering it inapplicable to claimants who had previously worked for concurrent employers. In *Mengel v. Workmen's Compensation Appeal Board (Boyer's IGA, Inc.)*, 118 Pa.Cmwlth. 582, 545 A.2d 992 (1988), the claimant was laid off from her job at Foltz Trucking in September 1984, when the company went out of business. She began collecting unemployment compensation benefits, but continued working at her second job at Boyer's

Supermarket. On February 1, 1985, she was injured while working at Boyer's. The Commonwealth Court affirmed the Board's decision that the claimant was not concurrently employed, and therefore ineligible to have her workers' compensation benefits calculated pursuant to Section 309(e). Moreover, the court noted that the Act does not provide that the receipt of unemployment compensation is deemed to constitute concurrent employment.

Claimant asserts that the Commonwealth Court correctly decided *Freeman* and *Mengel* because in those cases the alleged concurrent employer had gone out of business, thus precluding the possibility of a continuing employment relationship. However, in the instant matter, although Claimant was receiving unemployment compensation benefits, he was required to call R & J on a daily basis to find out if work was available. Otherwise, R & J would have considered him to have voluntarily quit. He argues that if R & J no longer employed him during the layoff, there would have been no employment from which to quit.

It is Claimant's position that the receipt of unemployment compensation benefits is one factor to be considered in determining whether an injured employee has concurrent employment pursuant to Section 309(e). He suggests that each case must be decided in light of the individual circumstances presented. Here, on the date of injury, Claimant was on temporary layoff from a full-time position that he had held for seven years. He was required to call R & J every day as a condition of maintaining his employment contract. Furthermore, it is undisputed that his loss of income from R & J after May 31, 1990, was not the result of adverse economic conditions (i.e. plant closing), but was a direct result of the work-related injury he sustained at Triangle. Because of these factors, Claimant asserts that he was concurrently employed on the date of injury.

I disagree with Claimant that the Commonwealth Court's decisions in *Freeman* and *Mengel* were based on the employers having permanently closed their businesses. Not only are the Commonwealth Court's decisions silent as to the relevance

of this fact, but both clearly set forth their reliance on the specific language of Section 309(e), which refers to the calculation of benefits, "where the employe is working under concurrent contracts with two or more employers." As Triangle notes, Section 104 of the Act, 77 P.S. § 22, states:

> The term "employe" as used in the Act is to be synonymous with servant, and includes—All natural persons who perform services for another for valuable consideration....

As of January 31, 1990, the date of his injury, Claimant did not meet the definition of "employee" because for more than two months he had not performed services for R & J for valuable consideration. Furthermore, Section 4($l$)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, 43 P.S. § 753($l$)(1) defines "employment" as:

> all personal service performed for remuneration by an individual under contract of hire, express or implied, written or oral, including service in interstate commerce and service as an officer of a corporation.

When Claimant was injured while working at Triangle, it is clear that he was not receiving remuneration from R & J. Nor can it be argued that his calling R & J to ask about the possibility of work constitutes a personal service.

I agree with Triangle that the focus of the inquiry must be whether a claimant is working for the second employer at the time of his injury. Shifting the focus to the relationship between claimant and the second employer, or to whether the second employer's inability to offer work to the claimant is temporary or permanent, creates administrative complexities and deviates from the plain language of Section 309(e). The Commonwealth Court properly held that Claimant was not concurrently employed because his receipt of unemployment compensation benefits establishes that he was not working for R & J at the time of his injury. Accordingly, the determination not to calculate Claimant's workers compensation benefits according to Section 309(e) is correct.

For these reasons, I would affirm the Order of the Commonwealth Court.

Justices ZAPPALA and CASTILLE join this dissenting opinion.