**Jeffrey COLLIER, Petitioner,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (PRS/ENGLES
TRUCKING), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 22, 2002.

Decided Aug. 23, 2002.

Thomas P. Wall, II, Erie, for petitioner.

Daniel W. Deitrick, Pittsburgh, for respondent.

Before: McGINLEY, Judge, LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Senior Judge DOYLE.[1]

Jeffrey Collier (Claimant) petitions this Court for review of an order of the Workers' Compensation Appeal Board (Board), which reversed an order of a Workers' Compensation Judge (WCJ) that modified a notice of compensation payable with regard to the calculation of Claimant's average weekly wage (AWW) and corresponding compensation. After careful review of the record, we affirm the order of the Board.

Beginning on or about January 26, 1999, Claimant was employed by PRS/Engles Trucking (Employer) as an over-the-road truck driver. Due to an injury that was

---

1. This case was reassigned to the authoring judge on June 11, 2002.

the result of a non-work-related automobile accident, Claimant was unable to work for Employer from March 13, 1999, to May 26, 1999. Claimant then returned to work with Employer but, on June 15, 1999, he suffered a work-related knee injury. Employer acknowledged Claimant's injury through a Notice of Compensation Payable (NCP), pursuant to which Claimant received benefits in the amount of $188.35 per week based upon a calculated AWW of $209.27. Claimant, challenging the accuracy of the AWW as calculated in the NCP, filed a petition to review compensation benefits. Employer filed an Answer denying that the AWW was miscalculated.

Hearings were held before a WCJ. In support of his petition, Claimant testified that Employer paid him a percentage of each load hauled and that he hauled between three and six loads a week. Claimant estimated that his gross pay averaged between $600.00 and $700.00 per week. In addition to his testimony, Claimant submitted his pay stubs as evidence of his weekly pay. Employer submitted no evidence.

On September 5, 2000, the WCJ circulated a decision in which she determined that Claimant had sustained his burden of proof and that Claimant's correct AWW should be calculated to be $662.66, with a corresponding compensation rate of $441.76. Employer appealed to the Board.

Relying on this Court's decision in *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa.Cmwlth. 2000), the Board determined that, during the time of his non-work-related disability, Claimant was still "employed" by Employer such that his AWW had been properly calculated in the NCP under Section 309(d.1) of the Workers' Compensation Act (Act),[2] 77 P.S. § 582(d.1). The Board reversed the WCJ's decision, and noted that Claimant did not present any evidence that he quit, was discharged from employment, or that he was required to reapply or reinterview before resuming work with Employer, and therefore he was still employed by Employer even though he received no wages from the Employer for the period of time he was not working because of the non-work-related injury. Claimant's petition to this Court followed.[3]

Claimant raises the following issues for our review: (1) whether Claimant was an "employee" of Employer during the time of his non-work-related disability, and (2) whether the Board erred in reversing the WCJ's decision with regard to the calculation of Claimant's AWW.

Section 423 of the Act, 77 P.S. § 771, provides that a WCJ may modify or set aside an NCP when such NCP is incorrect in any material respect,[4] and, in the present case, Claimant argues that the calculation of his AWW in the NCP was materially incorrect.

For the purpose of determining the amount of compensation due a workers'

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

**3.** Our standard of review in this matter is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

**4.** Section 423 of the Act provides as follows:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

compensation claimant, Section 309 of the Act, 77 P.S. § 582, establishes the manner in which a claimant's AWW should be calculated. Section 309(d.1) provides that

> [i]f the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen **the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury** and by averaging the total amounts earned during such periods.

77 P.S. § 582(d.1) (emphasis added). Pursuant to Section 309(d.2), however, if a claimant has not worked a completed period of thirteen calendar weeks and does not have fixed weekly wages, the claimant's AWW is calculated as follows:

> the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582(d.2).

■ With respect to the calculation of Claimant's AWW, Claimant specifically contends that the calculation of his AWW should be made pursuant to Section 309(*d.2*), not Section 309(*d.1*), because he was not an "employee" during the time of his non-work-related disability such that he did not work a completed period of thirteen calendar weeks prior to his injury. For the reasons that follow, we must disagree.

In *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000), our Supreme Court essentially determined that,

in the context of determining a claimant's AWW under Section 309 of the Act, an employee who was laid-off was nevertheless still considered "employed" for purposes of Section 309 because the employee's relationship with the employer was not terminated; the employee maintained a relationship with the employer, and the employee could return to his job if work became available.[5] Similarly, in *Norton,* relying on *Triangle,* this Court determined that an employee who did not work during periods where his employer temporarily closed the business was nevertheless still considered "employed" such that the time he was not working would be considered in calculating his AWW under Section 309. Specifically, we determined that the employment period of a workers' compensation claimant "is not limited to the actual days an employee works for wages, but encompasses the period of time that an employment relationship is maintained between the parties." *Norton,* 764 A.2d at 708.

■ In both of these cases, just as here, the claimant was not **permanently** terminated from his employment and was not required to reapply or reinterview to begin working again. In both cases, the relationship between the employer and employee continued and the employee could return to work when it became possible. Thus, the principle which may be distilled from *Triangle* and *Norton* is that if the relationship between the employer and employee is not **permanently** severed, then the employment relationship continues, and that, for purposes of calculation of AWW under Section 309, a thirteen-week calendar period which includes days not worked (*e.g.,* because of illness, vacation, no work available, etc.) is nevertheless considered a "completed period" for purposes

---

**5.** In *Triangle,* the claimant had concurrent wages from two employers and had been laid-off for lack of work by the one employer two months prior to his injury incurred while working for the second employer.

of the calculation of a claimant's AWW under Section 309(d.1).

The facts in the appeal presently before us are clear that an employment relationship between Claimant and Employer continued because Claimant could, and did, return to work upon being able to do so, that is, when he was no longer disabled because of his non-work-related injury. (*See* WCJ's Decision, Finding of Fact No. 1, at 1). Also, as noted by the Board, Claimant presented no evidence that he quit, was discharged from employment, or that he was required to reapply or reinterview to resume his position. Thus, because the employment relationship continued, Claimant was "employed" by Employer from January 26, 1999, through June 15, 1999.[6] As this period includes one "completed" thirteen-week period that immediately preceded Claimant's injury, the calculation of Claimant's AWW was properly calculated pursuant to Section 309(d.1).

Accordingly, the order of the Board is affirmed.

### ORDER

**NOW,** August 23, 2002, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

Dissenting Opinion by Judge McGINLEY.

I respectfully dissent to the majority's conclusion that an employment relationship continued from March 13, 1999, to May 26, 1999 when Claimant was off work due to his non-work-related accident. Based on this conclusion, the majority agreed with the Board's application of Section 309(d.1)[1] rather than Section 309(d.2) in calculating Claimant's AWW.

The majority states:

In both of these cases [*Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000) and *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa.Cmwlth.2000)], just as here, the claimant was not *permanently* terminated from his employment and was not required to reapply or reinterview to begin working again. In both cases, the relationship between the employer and employee continued and the employee could return to work when it became possible. Thus, the principle which may be distilled from Triangle

---

**6.** Claimant cites this Court's decision in *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare)*, 141 Pa.Cmwlth.103, 595 A.2d 213 (1991), *petition for allowance of appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992), for the proposition that a determination regarding whether Claimant was employed during the time of his non-work-related disability requires specific findings with regard to (1) Employer's right to select the employee; (2) Employer's right and power to remove the employee; (3) Employer's power to direct the manner of performance; and (4) the potential power to control Claimant. In *Sunset*, however, we were addressing the issue of who, between two employers, actually employed the claimant at the time of his work-related injury. The analysis in *Sunset* is inapplicable here because we are asked to determine if Claimant, who was ad-

mittedly employed by Employer at the time of his work-related injury, was considered an employee during a period of time that he could not work for Employer due to his non-work-related disability.

**1.** Pursuant to Section 309(d.1) of the Act, 77 P.S. § 582(d.1):

If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

and Norton is that if the relationship between the employer and employee is not *permanently* severed, then the employment relationship continues, and that, for purposes of calculation of AWW under Section 309, a thirteen-week calendar period which includes days not worked (e.g., because of illness, vacation, no work available, etc.) is nevertheless considered a "completed period" for purposes of the calculation of a claimant's AWW under Section 309(d.1).

Majority Opinion at 1269–70 (emphasis in original). I disagree with the majority's reliance upon *Triangle Building Center* and *Norton.*

*Triangle Building Center* is distinguishable in that Malcom Linch concurrently worked for two employers and received unemployment benefits from the employer who placed him in layoff status. Our Pennsylvania Supreme Court held that the receipt of unemployment benefits was not dispositive with respect to the AWW determination. Here, Claimant worked for just one employer and did not experience a layoff. Nevertheless, the Pennsylvania Supreme Court's discussion of legislative intent was instructive: "the baseline figure from which benefits are calculated should *reasonably reflect the economic reality of a claimant's recent pre-injury earning experience,* with some benefit of the doubt to be afforded to the claimant in the assessment." *Triangle Building Center,* 560 Pa. at 548, 746 A.2d at 1112 (emphasis added).

In *Norton,* this Court considered different ways to compute AWW and held that

Galen Norton (Norton) was "employed" even though the business was shut down on occasion when his employer was on vacation. The distinguishing factor is the WCJ found an employer/employee relationship during the time Norton did not work. *Norton,* 764 A.2d at 706. In the present controversy, a review of the record reveals there was no specific finding about the employment relationship.

Here, the facts give rise to a unique set of circumstances. As a truck driver, Claimant did not receive fixed wages. The majority acknowledged Claimant's testimony "that Employer paid him a *percentage of each load hauled* and that he hauled *between three and six loads a week.* Claimant estimated that his gross pay *averaged* between $600.00 and $700.00 per week." Majority Opinion at 2 (emphasis added).[2] The variation in Claimant's pay depended upon how many loads he hauled.

Claimant was paid for five weeks before he was involved in a non-work accident. He was off for nine weeks, then returned to work and earned three more weekly paychecks until his work injury occurred. The majority reasons that the employment relationship continued because Claimant returned to work after the nine-week hiatus. Majority Opinion at 6. In essence, the majority makes an unwarranted conclusion regarding the employment relationship. Here, there were no indicia of a relationship, particularly no showing of Employer's control[3] over Claimant while he recuperated from his non-work injury.

---

**2.** *See also* Notes of Testimony, June 5, 2000, at 8–9; Reproduced Record at 71a–72a.

**3.** Four elements are assessed to determine the employment relationship:
  (1) the right to select the employee;
  (2) the right and power to remove the employee;
  (3) the power to direct the manner of performance; and

  (4) the potential power to control the employee.
  *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare),* 141 Pa.Cmwlth.103, 595 A.2d 213, 216 (1991) *citing Chichester School District v. Workmen's Compensation Appeal Board (Fox and Department of Public Welfare),* 140 Pa. Cmwlth.224, 592 A.2d 774 (1991).

In the absence of a finding of the employment relationship during the nine-week period from March through May 1999, the Board erred by factoring those weeks into the calculation of Claimant's AWW. The Board misapplied Section 309(d.1) of the Act to calculate Claimant's AWW. In sum, the majority improperly accepted the Board's rationale. I believe Claimant is being unjustifiably punished for being unable to work due to a non-work-related injury, something totally beyond his control and not intended by the General Assembly.

Therefore, I would reverse and remand to the Board with instructions to remand to the WCJ to calculate Claimant's AWW based upon Section 309(d.2)[4] of the Act.

---

4. Section 309(d.2) of the Act, 77 P.S. § 582(d.2) provides:

   If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.