# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Resources for Human Development,   :
Inc. and Gallagher Bassett Services,   :
                     Petitioners   :
  :
               v.   :    No. 494 C.D. 2022
  :    Submitted: November 6, 2023
Sherry Dixon (Workers'   :
Compensation Appeal Board),   :
                   Respondent   :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER            FILED: December 20, 2023

Resources for Human Development, Inc., and Gallagher Bassett Services (together, Employer) petition for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ), which granted the Petition to Review Compensation Benefits (Review Petition) filed by Sherry Dixon (Claimant) wherein she challenged Employer's calculation of her average weekly wage (AWW).[1] The WCJ found that Claimant's AWW was not accurately calculated because it did not include wages from her concurrent employment. On appeal, Employer argues the WCJ's decision finding Claimant had concurrent employment was not supported by substantial, competent evidence, was inconsistent with this Court's decision in *Freeman v. Workmen's Compensation Appeal Board (C.J. Langenfelder & Son)*, 527 A.2d 1100 (Pa.

---

[1] The WCJ's decision also addressed numerous other petitions filed by both Employer and Claimant; however, no appeals were filed with regard to the resolution of those petitions.

Cmwlth. 1987), and was not reasoned as required by Section 422(a) of the Workers' Compensation Act (Act).[2]  Upon review, we affirm.

Claimant, a home health aide, sustained a work-related injury on December 29, 2018, when a patient fell onto her.  (Reproduced Record (R.R.) at 34a.) Employer issued a Notice of Temporary Compensation Payable (NTCP), accepting an injury in the nature of a "multiple trunk" "strain or tear," which converted by law into a notice of compensation payable (NCP).  (*Id.* at 34a, 36a.)  The NTCP listed Claimant's weekly compensation rate as $468.00 based on an AWW of $520.00. (*Id.* at 35a.)  Claimant filed the Review Petition, alleging that her AWW did not include wages from her concurrent employment as a private duty home health aide with Public Partnerships, LLP (Public Partnerships).  (*Id.* at 207a-08a; Summary of Evidence (SOE) at 17.[3])  Employer filed an answer denying the Review Petition's material allegations.  (R.R. at 203a.)  The matter was assigned to a WCJ, who held

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834.  This section provides, in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.  The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section.  When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence.  Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection.  The adjudication shall provide the basis for meaningful appellate review.

*Id.*

[3] The WCJ incorporated by reference "[a] certified Summary of Evidence" submitted by Employer's counsel.  (WCJ Decision, Finding of Fact ¶ 5.)  The Summary of Evidence was admitted as Exhibit D-7 and can be found in the Certified Record as Item 48.

hearings, at which Claimant testified in person and offered her deposition testimony and documents calculating her wages for Public Partnerships. For its part, Employer cross-examined Claimant on the topic of her concurrent employment.

Claimant testified as follows. Claimant worked about 42 hours per week at $13.00 per hour as a home health aide for Employer and had worked for Employer for 7 months when the work injury occurred. (SOE at 16.) Claimant was off work for two weeks after the injury and then returned to modified-duty work until April 2019, when she stopped working for Employer due to increased pain and Employer's inability to accommodate her work restrictions. (*Id.* at 16-17.) She also worked as a private home health aide for Public Partnerships, working between 42 and 84 hours per week at $12.00 per hour. (*Id.* at 17.) Claimant had worked for Public Partnerships for five years and could not recall if she worked her Public Partnerships' position on the day she was injured. (*Id.*; R.R. at 88a-89a.) Claimant's concurrent work did not require her to perform physical tasks and, therefore, she was able to continue working that position following her work injury and after she ceased working for Employer. (SOE at 17, 22-23; R.R. at 168a-69a.) Claimant submitted an exhibit showing her AWW calculations for her concurrent employment covering pay periods between December 31, 2017, and December 29, 2018. (R.R. at 38a-40a.) She also submitted a "Verification of Employment" from Public Partnerships reflecting that Claimant's employment began in December 2012 and continued into September 2019. (*Id.* at 50a-55a.) According to those records, Claimant's AWW from Public Partnerships was $1,155.46, resulting in a compensation rate of $770.30. (*Id.* at 38a.)

Upon his review, the WCJ accepted Claimant's evidence on her AWW as credible and persuasive and found that

3

the record reveals that Claimant had concurrent employment – essentially being a health care aide with duties extremely lighter in nature than required by her employment with the named Employer. [Employer] has challenged the concurrent employment, averring Claimant was not so employed as of the injury date – this contention is refuted by Claimant's testimony, which indicated that while she may not have engaged in the concurrent employment on the very day of her relevant work injury, such employment had been going on for a substantial period of time when the work injury occurred[.] [I]t is found [that] Claimant's request to have those earnings added in calculating the proper AWW is appropriate. In this regard, with the NTCP noting an AWW of $520.00 with the named Employer, and the parties apparently agreeing the documents from . . . [Public Partnerships] showing an AWW of $1,155.46, the proper AWW is found to be $1,675.46 – and the [] Review Petition . . . is appropriately so granted.

(WCJ Decision, Finding of Fact (FOF) ¶ 12.)

Employer appealed to the Board, arguing the WCJ erred in finding that Claimant had concurrent employment and the WCJ's decision was not reasoned enough to allow for meaningful appellate review. (Certified Record (C.R.) at 88-89.) The Board disagreed and affirmed. Employer now petitions this Court for review.[4]

Employer argues the WCJ's decision increasing Claimant's AWW to include her concurrent employment for Public Partnerships is erroneous because *Freeman* requires the concurrent employment "at the time of [] injury," 527 A.2d at 1102, and "the evidentiary record is completely devoid of any evidence that would support that [Claimant] was concurrently employed at the time of her work injury." (Employer's Brief (Br.) at 9.) Rather, the evidence here, Employer asserts, reflects that Claimant worked for Public Partnerships prior to the work injury and returned to work at her

---

[4] This Court's standard of review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

concurrent employment after the work injury, but nothing shows she was employed in that position on December 29, 2018, the date of her work injury. It maintains the standard the WCJ used, examining whether Claimant's employment with Public Partnerships "had been 'ongoing for a substantial period of time' when the injury occurred," is contrary to the *Freeman* test. (*Id.* (quoting FOF ¶ 12).) Employer additionally argues the WCJ's decision "was not well[ ]reasoned within the meaning of Section 422[(a)]" because the WCJ disregarded *Freeman* and applied his own test and found concurrent employment notwithstanding the absence of evidence to support that finding.[5] (*Id.* at 10-11.)

Section 309(e) of the Act states, in pertinent part, that "[w]here the employe is working under concurrent contracts with two or more employers, his **wages from all such employers shall be considered** as if earned from the employer liable for compensation." 77 P.S. § 582(e) (emphasis added). As the Board accurately sets forth in its opinion:

> Section 413(a) of the Act, 77 P.S. § 771, provides for corrections to an NCP, an agreement for compensation, or a supplemental agreement if incorrect in any material respect. *Russo v. W[orkers' Comp. Appeal Bd.] (Mon/Val Res[.])*, 755 A.2d 94[, 97] (Pa. Cmwlth. 2000). Wages received from all concurrent separate employments are used to determine the AWW to calculate compensation payable by the liable employer. [*Workmen's Comp. Appeal Bd. v. Evening Bull.*], 445 A.2d 1190[, 1192] (Pa. 1982). Concurrent means "at the time[] of the injury.["] *Freeman* . . . , 527 A.2d [at 1102 (emphasis omitted).] . . . . If the concurrent employment relationship is found to be intact, then earnings from the concurrent employer must be used in calculating the AWW. *Triangle Bldg. Ctr. v. W[orkers' Comp. Appeal Bd.] (Linch)*, 746 A.2d 1108[, 1113] (Pa. 2000). **The employee need not be disabled from the concurrent job to require inclusion of the wages in the calculation of the average wage.** *Miller v. W[orkmen's Comp.*

---

[5] Claimant filed a notice of non-participation.

*Appeal Bd.] (Midlantic Coast Delivery Sys.)*, 661 A.2d 916[, 919] (Pa. Cmwlth. 1995).

(Board Opinion at 4 (emphasis added).) "Where [a] claimant is not disabled from the other jobs, [] it is proper to place the claimant on partial disability, reducing the total disability benefit by the wages earned from the jobs from which the claimant is not disabled." *Miller*, 661 A.2d at 919. Here, however, Employer **did not** assert in its appeal to the Board and **does not** assert in its appeal to this Court that Claimant's benefits should have been designated partial and reduced by the wages she earned working for Public Partnerships. Instead, Employer argues that Claimant was not concurrently employed when she was injured.

After reviewing Claimant's credited evidence, the Board concluded that the WCJ's finding that Claimant had concurrent employment was supported by Claimant's testimony and log of wages from Public Partnerships. (Board Op. at 6.) That evidence showed that

> [w]hile Claimant did not recall if she worked for Public Partnerships on her actual day of injury, she testified that she continued to work as a home health aide for Public Partnerships following both her work injury and her last day of employment with [Employer] in April 2019. . . . Thus, at the time of her work injury on December 29, 2018, Claimant's concurrent employment relationship with Public Partnerships was very much intact. *Linch*[, 746 A.2d at 1113]. The [C]ourt in *Freeman* explained that an employee must have two employers at the same point in time, at the time of the work incident, to receive a higher weekly wage. The WCJ correctly distinguished that *Freeman* d[oes] **not** require Claimant to [have been] working for Public Partnerships on her actual day of injury to receive a higher AWW, and that Claimant's longstanding and ongoing employment with Public Partnerships constituted concurrent employment.

(*Id.* at 6-7 (emphasis added).)

We agree with the Board's reasoning for affirming the finding that Claimant was concurrently employed "at the time of [her] injury," as required by *Freeman*,

6

527 A.2d at 1102. Employer's argument appears to be that, for her work for Public Partnerships to qualify as concurrent employment, Claimant had to work both positions **on the day the injury occurred**. This argument reflects a misreading of *Freeman* and Section 309(e) and is contradicted by the holdings in *Linch* and *Hoffman v. Workers' Compensation Appeal Board (Acme Markets, Inc.)*, 716 A.2d 711 (Pa. Cmwlth. 1998).

Our Supreme Court held, in *Linch*, that Section 309(e) was intended "to create a reasonable picture of a claimant's pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss." 746 A.2d at 1112. "[I]n order for an employment relationship to constitute concurrent employment for purposes of Section 309(e), **the relationship must remain sufficiently intact** such that the claimant's **past earning experience remains a valid predictor of future earnings loss**." *Id.* (emphasis added). Applying this standard, the Supreme Court held the claimant in *Linch*, who was temporarily laid off from his concurrent employment at the time of his work injury, was entitled to the inclusion of additional wages for concurrent employment. The Supreme Court described the claimant's concurrent employment as follows: the "[c]laimant had a substantial, seven-year pre-injury work history," and that, even though he experienced a few temporary layoffs, he was never terminated from that employment, was required to and did call the concurrent employer daily to maintain that work relationship, and did return to work when work was available. *Id.* at 1113. Such history established that the concurrent employment relationship was "sufficiently intact" for purposes of Section 309(e) even though the claimant was, at the time of the injury, temporarily laid-off from that position. *Id.* at 1112-13.

7

In *Hoffman*, this Court held that a claimant had concurrent employment at the time of his work injury, even though that concurrent employment, driving a school bus full time, was seasonal, and he was injured at his job at a grocery store during the summer. 716 A.2d at 713-14. Similar to here, the employer had argued, and the WCJ and Board agreed, that the claimant had not been concurrently employed at the time of the injury because he was not actually working that position when he was injured. We rejected that argument, citing the testimony of the concurrent employer that the position was seasonal due to the nature of the work; their employees were not terminated, but were laid off over the summer; and bus drivers were asked in June if they intended to return in September, and the claimant expressed his intention to do so. *Id.* Thus, as in *Linch*, the claimant in *Hoffman* was found to have concurrent employment notwithstanding that he was not working at that employment during the summer.

We read the WCJ's finding that Claimant's concurrent employment with Public Partnerships was "going on for a substantial period of time," (FOF ¶ 12), not as the WCJ's disregard of *Freeman*'s standard, but as a finding that this employment relationship was "sufficiently intact" as required by *Linch*, 746 A.2d at 1112. Even though Claimant may not have worked her Public Partnerships job on the day she was injured, there can be no reasonable argument that her employment relationship with Public Partnerships was not "sufficiently intact," *id.*, when the work injury occurred in December 2018, where the credited evidence showed that this relationship existed prior to her work with Employer, while she worked for Employer, and after she stopped working for Employer. Indeed, the claimants in *Linch* and *Hoffman* were found to have concurrent employment at the time of their work injuries even though they were not actually performing that employment due

8

to, respectively, a temporary layoff or it being off-season, and Claimant's work with Public Partnerships was unquestionably ongoing. Thus, we reject Employer's interpretation of *Freeman*. Indeed, to accept Employer's argument, the Court would have to ignore *Linch* and *Hoffman* and disregard the purpose of Section 309(e), which is to provide a "reasonable picture of a claimant's pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss." *Linch*, 746 A.2d at 1112.

Having concluded that substantial evidence supports the WCJ's findings and that the WCJ's conclusions are consistent with Section 306(e) and precedent, Employer's argument that the WCJ's decision was not reasoned pursuant to Section 422(a) of the Act necessarily fails. And, for these same reasons, the Board did not err in upholding the WCJ's decision granting the Review Petition. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge Dumas did not participate in the decision in this case.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Resources for Human Development,   :
Inc. and Gallagher Bassett Services,   :
                         Petitioners   :
                                :
                   v.   :   No.  494 C.D. 2022
                                :
Sherry Dixon (Workers'   :
Compensation Appeal Board),   :
                        Respondent   :

# O R D E R

    **NOW**, December 20, 2023, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
    **RENÉE COHN JUBELIRER,** President Judge