William COLPETZER, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (STANDARD STEEL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 24, 2002.

Decided July 17, 2002.

Daniel K. Bricmone, Pittsburgh, for petitioner.

Dennis R. Sheaffer, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and COHN, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

William Colpetzer (Claimant) petitions this Court to review an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) granting in part and denying in part Claimant's modification petition. We vacate and remand in part and affirm in part.

On December 5, 1996, Claimant suffered a cervical injury while in the course of his employment with Standard Steel, Division of Freedom Forge Corporation (Employer). Employer issued a notice of compensation payable (NCP), describing the injury as a cervical strain and setting Claimant's average weekly wage at $525.80, yielding a compensation rate of $350.53. Claimant worked with restricted duty from December 6, 1996 until February 23, 1997. He was then placed on total disability from February 24, 1997 until May 4, 1997.

On November 2, 1998, Claimant filed a modification petition seeking to modify the average weekly wage set forth in the NCP and seeking benefits for disfigurement.[1] The argument that his average weekly wage was incorrectly calculated is based on the fact that for approximately two quarters during the fifty-two weeks of his employment with Employer preceding the work injury, Claimant was receiving workers' compensation benefits for a different work injury in lieu of any wages he would have earned if he had not been disabled. Claimant had sustained a separate work injury on March 15, 1996 involving a right shoulder strain, and Employer had issued a notice of compensation payable regarding that injury establishing an average

---

1. The WCJ eventually granted Claimant's modification petition pertaining to the request for benefits for disfigurement, finding that Claimant had proven the existence of a disfiguring cervical scar. The WCJ awarded twenty-five weeks of benefits.

weekly wage of $791.32 with a compensation rate of $527.00 per week, representing the maximum benefit allowed at that time. Claimant argued that because his wages were artificially low during the fifty-two weeks preceding the present injury because of his other disability, his average weekly wage should be calculated by averaging the wages he received during his two "complete" quarters, that is, the two quarters where he was not absent and thus not receiving wages because of a work-related disability. By adopting Claimant's method of calculation, Claimant's average weekly wages would be set at $602.06, yielding a compensation rate of $401.57, or $51.04 per week more than that established under the NCP.

■ The WCJ rejected Claimant's argument, concluding that Employer had correctly calculated Claimant's average weekly wage from earnings Claimant received during the four thirteen-week periods of employment with Employer that preceded the work injury, pursuant to Section 309(d) of the Workers' Compensation Act (Act).[2] The WCJ also rejected an alleged request by Claimant to modify the notice of compensation payable issued for the March 15, 1996 right shoulder injury to include as related to that injury the December 5, 1996 cervical injury. The WCJ accordingly denied Claimant's modification petition except for that portion requesting benefits for disfigurement. The Board affirmed in part and modified in part,[3] and this petition for review followed.[4]

■ Claimant raises the following issues: (1) whether the WCJ erred by applying Section 309(d) of the Act in calculating his average weekly wage, and (2) whether the WCJ erred by ruling on an alleged request by Claimant to include the cervical injury as a manifestation of the earlier shoulder injury when Claimant allegedly never pursued this relief.

Section 309 provides generally for the method of ascertaining the correct average weekly wage of a claimant. Subsections (a), (b), and (c) provide calculations for fixing the average weekly wage when the claimant's wages are fixed, respectively, by the week, month, and year. Section 309(d), (d.1), and (d.2) provide:

> (d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

> (d.1) If the employee has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d).

**3.** The Board modified the WCJ's decision to award Claimant fifty weeks of benefits for his disfiguring scar rather than the originally awarded twenty-five weeks of benefits. The issue of the appropriate award of benefits pertaining to Claimant's disfigurement is not before us.

**4.** This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board (Iten)*, 744 A.2d 348 (Pa. Cmwlth.2000).

for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

(d.2) If the employee has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employee was expected to work per week under the terms of employment.

Because Claimant did not have fixed wages by the week, month, or year, his average weekly wage must be calculated under Section 309(d), (d.1), or (d.2). These sections, on their face, pertain to three different situations. Subsection (d) applies when the employee, at the time of injury, has been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two week period immediately preceding the work injury. Subsection (d.1) applies when the employee, at the time of the injury, has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two week period immediately preceding the work injury. Subsection (d.2) applies when the employee, at the time of injury, has not yet worked a complete period of thirteen weeks for the employer.

We have held, with regard to whether subsection (d) or (d.1) applies, that the critical issue is whether an employee has been "employed" for the applicable period of time, not whether the employee had actually worked and earned wages during that applicable time. *Norton v. Workers' Compensation Appeal Board (Norton),* 764 A.2d 704 (Pa.Cmwlth.2000). Thus, if an employee had been employed for at

least three consecutive periods of thirteen calendar weeks in the fifty-two week period immediately preceding the work injury, subsection (d) applies even if during that time the employee could not work and earn wages (and thus not "complete" at least three thirteen week periods of work in the preceding fifty-two weeks).[5] *Id.* Here, because Claimant was very plainly employed by Employer for at least fifty-two weeks preceding the work injury, the WCJ correctly determined that subsection (d), and not (d.1) as argued by Claimant, applied.

■ This is not to hold that the WCJ's calculation of the average weekly wage is correct, however. Our Supreme Court has determined that the intent of Section 309 is to establish a baseline figure from which benefits are calculated that *reasonably reflects* the *reality* of the claimant's pre-injury earning experience as a predictor of *future earning potential. Triangle Building Center v. Workers' Compensation Appeal Board (Linch),* 560 Pa. 540, 746 A.2d 1108 (2000). Indeed, the Court noted in *Triangle Building Center* that the Act, generally, required that a reasonable assessment be made of a claimant's pre-injury ability to generate *future* earnings. Thus, Section 309 "directs the focus to the employee's past performance, often measured over a period of time, as a gauge for determining this future earning potential." *Id.* at 547, 746 A.2d at 1112. In line with these principles, we have held that Section 309 is not to be interpreted narrowly or strictly when the result would be an artificially low average weekly wage, unreflective of the reality of a claimant's pre-injury earnings experience. *Bethlehem Structural Products v. Workers' Compensation Ap-*

---

**5.** In *Norton,* the employee failed to have at least two "complete" preceding quarters because his employer would shut down the business periodically for vacation and other reasons.

*peal Board (Vernon)*, 789 A.2d 767 (Pa. Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 706, 796 A.2d 986 (2002).

In the present case, the WCJ applied Section 309(d) to Claimant's earnings during the four consecutive periods of thirteen calendar weeks in the fifty-two week period immediately preceding the work injury. These earnings were as follows:

| | From | To | Wages |
|---|---|---|---|
| 1st Period | 12–4–95 | 3–3–96 | $7407.15 |
| 2nd Period | 3–4–96 | 6–2–96 | $2049.64 |
| 3rd Period | 6–3–96 | 9–1–96 | $2246.26 |
| 4th Period | 9–2–96 | 12–1–96 | $8246.63 |

Claimant received disability benefits for his work-related shoulder injury from March 18, 1996 until August 15, 1996. Thus, the only way Claimant's pre-injury earning experience during this particular fifty-two week period could serve as a predictor of future earning potential would be to assume that Claimant would be off work and receiving disability benefits for approximately five months for every future fifty-two week period. This circumstance would not, of course, reasonably reflect the reality of Claimant's actual earning experience.

Section 309(d) does not address the circumstance where an employee is unable to work during the fifty-two week period preceding the work injury because of injury or other cause and thus does not receive wages that actually reflects the reality of the employee's earning potential.[6] In the case of an employee who is absent from work because of a work-related disability, we note that the method to determine the reality of the employee's earning potential during the time of disability is obvious. By virtue of the fact that the employee is receiving disability benefits, his or her *average weekly wage* during this period has already been established. Thus, it is a simple matter of using an established average weekly wage for the period when the employee is on disability as a gauge to reflect the reality of the employee's earning potential during that time.

■ The purpose of Section 309 is to establish an employee's average weekly wage that closely reflects the reality of the employee's earning experience. Using an already established average weekly wage for periods where the employee is off on disability is certainly more reflective of the reality of the employee's earnings situation than is basing the calculation on a hole in the employee's work history established only by an absence of wages paid on the employer's ledger. The former approach more closely reflects the reality that Section 309 is designed to identify; the latter reflects an artificial situation that does nothing but present the employer with a windfall that the Act certainly did not intend. Moreover, the latter approach directly penalizes an employee for being off work on a work-related disability and collecting benefits under the Act.

■ We are guided by established legal principles that the WCJ failed to observe by her narrow application of Section 309(d). The ultimate goal of the workers' compensation program is to make the injured employee whole. *O'Brien v. Workers' Compensation Appeal Board (City of Philadelphia)*, 780 A.2d 829 (Pa.Cmwlth. 2001). Thus, the Act is not to be strictly construed, but must be liberally interpreted in favor of the injured employee to effect the Act's remedial and humanitarian purposes. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319

---

6. This is not to say that in all cases when an hourly employee is absent from work during the applicable period preceding the work injury, a false or artificial earnings history is established. Obviously, each case must be reviewed on its particular facts.

(1996); *U.S. Airways v. Workers' Compensation Appeal Board (Dixon)*, 764 A.2d 635 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 567 Pa. 753, 788 A.2d 382 (2001). Moreover, statutes are not to be construed to yield an absurd or unreasonable result. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S § 1922(1). More specifically, Section 309 was designed "with some benefit of the doubt to be afforded the claimant in the assessment" of his or her average weekly wage. *Triangle Building Center*, 560 Pa. at 548, 746 A.2d at 1112. Nothing in Section 309 establishes that an employee's period of disability, with its established average weekly wage, is to be excluded from a calculation of the employee's average weekly wage. Certainly, subsections (a), (b), and (c) do not allow for such exclusion. We therefore do not presume that the legislature intended the absurd result that such exclusion applies to subsection (d).

In the present case, a notice of compensation payable established Claimant's average weekly wage at $791.32 during the approximately five months of disability during the fifty-two weeks immediately preceding the current work injury. The WCJ erred by ignoring this evidence of Claimant's earning potential. The Board's order regarding the appropriate calculation of Claimant's average weekly wage must therefore be vacated, and this matter must be remanded for a new calculation of Claimant's average weekly wage under Section 309(d), incorporating the established average weekly wage for that period of time when Claimant was not receiving wages because of a work-related disability.

Claimant next argues that the WCJ erred by ruling on the issue of whether Claimant's cervical injury was related to the earlier shoulder injury, when Claimant purportedly never requested the WCJ to modify the earlier notice of compensation payable relating to the shoulder injury by including within it the more-recent cervical injury. Claimant fears that the WCJ's ruling establishes *res judicata*, or at least issue preclusion, on an issue that he did not pursue but, perhaps, *may* pursue in the future.

Claimant's modification petition does not raise the issue of whether Claimant's cervical injury was related to the earlier shoulder injury. Rather, the petition is restricted to the two issues previously stated: the correct calculation of Claimant's average weekly wage and a request for benefits related to a disfiguring scar. The issue of whether Claimant's cervical injury was related to the earlier shoulder injury was essentially discussed during a colloquy between counsel and the WCJ at a hearing. *See* Notes of Testimony, January 27, 1999, pp. 13–16. There, Claimant's counsel stated or suggested that he may pursue a theory that expands the original right shoulder injury to include the cervical injury and that he was "going to present some testimony to try to flesh [sic] where this is going." *Id.* at 16, 746 A.2d 1108.

As the Board concluded, however, the record shows that Claimant did not formally request the WCJ to include in his modification petition the issue of whether Claimant's cervical injury was related to the earlier shoulder injury.[7] The WCJ

---

7. The Board concluded, however, that the issue was moot because Claimant failed to provide medical evidence to link the cervical injury with the earlier shoulder injury. We do not understand how the WCJ's ruling on an issue not properly raised before her is

moot because Claimant failed to back this nonexistent issue with medical evidence. Whether this issue is necessary to the original decision, however, given our holding with respect to the correct calculation of Claimant's benefits, is debatable. *See Hebden v. Work-*

therefore ruled upon an issue not formally before her. Accordingly, the WCJ's ruling on this issue must be vacated.

For the foregoing reasons, the Board's order is vacated and remanded in part and affirmed in part. Specifically, the Board's order is vacated insofar as it affirms the WCJ's conclusions regarding the issue of whether Claimant's cervical injury was related to the earlier shoulder injury. Further, the Board's order is vacated insofar as it affirms the WCJ's order with regard to the calculation of Claimant's average weekly wage. This matter is remanded to the Board for further remand to the WCJ to recalculate the Claimant's average weekly wage under Section 309(d) of the Act, based in part on the established average weekly wage for that period of time when Claimant was not receiving wages because of a work-related disability. The Board's order is affirmed in all other respects.

### ORDER

AND NOW, this 17th day of July, 2002, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby vacated in part and affirmed in part. Specifically, the Board's order is vacated insofar as it affirms the determination of the workers' compensation judge (WCJ) regarding the issue of whether William Colpetzer's cervical injury was related to the earlier shoulder injury. The Board's order is further vacated insofar as it affirms the WCJ's order with regard to the calculation of Colpetzer's average weekly wage. This matter is remanded to the Board for further remand to the WCJ to recalculate

Colpetzer's average weekly wage, based in part on the established average weekly wage for that period of time when Colpetzer was not receiving wages because of a work-related disability. The Board's order is affirmed in all other respects.

Jurisdiction relinquished.

---

*men's Compensation Appeal Board (Bethenergy Mines, Inc.), 534 Pa. 327, 632 A.2d 1302 (1993) (the doctrine of broad res judicata or issue preclusion forecloses re-litigation in a later action of an issue of fact or law that was*

litigated *and necessary* to the original judgment). We will give Claimant the benefit of the doubt and vacate the WCJ's decision as to this issue.