David ZERBY, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (READING ANTHRACITE COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2002.

Decided April 14, 2003.

Jeffrey C. Majikas, Hazleton, for petitioner.

Katherine M. Lenahan, Scranton, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN.

This is an appeal by David Zerby (Claimant) from an order of the Workers' Compensation Appeal Board (Board), that affirmed the decision of a Workers' Compensation Judge (WCJ), to grant Claimant's claim petition and Reading Anthracite Company's (Employer) suspension petition. The Board also modified the calculation of Claimant's average weekly wage (AWW). We affirmed the Board's decision on August 20, 2002, and, thereafter, on October 25, 2002, granted Claimant's application for reconsideration to address a possible inconsistency between *Colpetzer v. Workers' Compensation Appeal Board (Standard Steel)*, 802 A.2d 1233 (Pa.Cmwlth.2002) and *Merkle v. Workers' Compensation Appeal Board (Hofmann Industries)*, 796 A.2d 1034 (Pa. Cmwlth.2002), the latter of which we relied upon in our previous opinion in the case *sub judice*.[1]

The procedural history of this case is somewhat complicated. Claimant sustained a work-related lumbar sprain on May 23, 1996, and received benefits pursuant to a notice of compensation payable which established an AWW of $696.22. On August 22, 1996, Employer filed a petition to suspend benefits on the basis that Claimant had refused suitable work on August 8, 1996. Claimant returned to work on November 7, 1996, without a loss of earnings. Then, on July 15, 1997, Claimant filed a claim petition for work-related cervical and low back injuries that he alleged occurred on May 29, 1997. The

---

1. Both *Colpetzer* and *Merkle* applied Section 309(d)(1) and, therefore, we have limited re-consideration to the appropriate interpretation and application of Section 309(d)(1).

WCJ consolidated the two petitions. He granted the suspension petition, effective November 7, 1996, based on Claimant's return to work without lost earnings. Additionally, he granted Claimant's claim petition for the cervical and back injuries and awarded benefits of $421.65 per week based on an AWW of $656.76. He used Section 309(d.1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(d.1), in calculating the AWW. Employer appealed to the Board, arguing that Section 309(d) of the Act, 77 P.S. § 582(d), rather than Section 309(d.1), should have been used to calculate the AWW.[2]

On appeal, the Board, *inter alia,* remanded, stating that the calculation of the AWW was in error because the WCJ failed to include bonus incentives and vacation time "in accordance with 309(d.1) and (e)." On remand, the WCJ recalculated the benefits and determined that Claimant's AWW was $657.93 (including bonuses) and that his compensation rate was $438.61. Employer again appealed, arguing that Section 309(d) and not Section 309(d.1) of the Act should control for purposes of calculation of the AWW. The Board changed its position and agreed with Employer's[3] holding that Section 309(d) applied and, additionally, that the WCJ erred in excluding from the calculation the periods of time when Claimant did not work. It modified the calculation to reflect an AWW of $511.43 and a corresponding compensation rate of $340.95.

Claimant appealed to this Court[4] alleging that the Board erred in applying Section 309(d) instead of Section 309(d.1) because there was no evidence that he "maintained his employment relationship" during the period he was not working as required under *Norton v. Workers' Compensation Appeal Board (Norton),* 764 A.2d 704 (Pa.Cmwlth.2000). In our initial decision, we rejected this portion of Claimant's argument. We adhere to that view today and hold that Section 309(d) was properly used. We reiterate our reasoning.

Section 309 of the Act provides in relevant part:

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c), the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(d.1) If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks im-

2. His quarterly wages were:
5/29/96–8/29/96 $ 213.92 with AWW of $ 16.46
8/29/96–11/29/96 $2,562.75 with AWW of $197.13
11/29/96–2/29/97 $8,215.04 with AWW of $631.93
2/29/97–5/29/97 $8,245.68 with AWW of $634.28

3. We have some concern that the Board reversed its legal position on the second appeal to it. However, this point is not argued on appeal and, in any event, as our disposition of the case makes clear, it was harmless error. We presume that the Board acted as it did for purposes of judicial economy.

4. Our scope of review is limited to determining whether the findings of fact are supported by substantial evidence and whether there has been an error of law or constitutional violation. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988). The determination of a Claimant's average weekly wage is one of law and, therefore, this Court's review is plenary. *Norton v. Workers' Compensation Appeal Board (Norton),* 764 A.2d 704 (Pa.Cmwlth.2000).

mediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

While Claimant concedes that he did some work in each of the three consecutive periods of 13 calendar weeks in the 52 weeks preceding the injury, (Claimant's initial brief at pp. 8–9), he asserts that there is no evidence of record that he "maintained an employment relationship" as required by our decision in *Norton*. Thus, he claims Section 309(d) cannot be utilized here.

■ We addressed this argument in *Norton*, wherein we discussed the notion that an employment relationship can exist without the actual performance of work. In *Norton*, we rejected the claimant's argument that the term "employ", as used in Section 309(d), is limited to those situations where the claimant is actively engaged in the performance of services for compensation. We held that the term "is not limited to the actual days an employee works for wages, but encompasses the period of time that an employment relationship is maintained between the parties." *Id.* at 708. In other words, "the Employe/Employer status ... still existed even though no work was performed." *Id.* at 706. We, thus, concluded that Norton's AWW was correctly calculated under Section 309(d) instead of 309(d.1), even though he did not work three full consecutive thirteen-week periods prior to his injury.

In the present case, Claimant asserts that Employer did not introduce evidence of Claimant's receipt of medical benefits, sick benefits, vacation days and seniority rights, which would be indicia of an ongoing employment relationship. In response, Employer argues that Claimant received wages during three consecutive periods of thirteen weeks in the fifty-two weeks immediately before the injury, and introduced a statement of wages as evidence in support of its argument. As this Court recently stated in *Merkle*, when discussing the evidentiary issue attendant to determining the existence of an employment relationship:

Here, the record establishes that Claimant had an employment relationship with Employer during each of the four consecutive thirteen-week periods comprising the fifty-two week period immediately preceding his March 13, 1998 injury. **Indeed, this is made obvious by the Statement of Wages, which shows that Claimant earned wages during each of these four consecutive thirteen-week periods. Clearly, then, even if his *work* was interrupted, Claimant maintained an employment relationship with Employer during each of those four periods.** Because Claimant had an employment relationship with Employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding his March 13, 1998 injury, section 309(d.1), by its clear language, does not apply here, *see* 77 P.S. § 582(d); *Port Authority [of Allegheny County v. Workers' Compensation Appeal Board (Cooley)*, 773 A.2d 224 (Pa. Cmwlth.2001)]*, and Employer's calculation under section 309(d) was proper.

*Id.* at 1037–1038 (boldface emphasis added). *Merkle* stands for the proposition that subsection 309(d) rather than 309(d.1) should be used.

■ In our original opinion, we affirmed the WCJ's AWW calculation based upon the wage statements for the three highest periods of thirteen weeks. However, a portion of the time when Claimant was

absent from work due to his first injury (May 26, 1996 through November 7, 1996) was included in this new AWW calculation, even though the AWW for these weeks had been previously determined in the original Notice of Compensation Payable (NCP). Because the wage statements do not reflect the AWW calculation in the original NCP, using only the wage statements to calculate the new AWW results in artificially depressing Claimant's newly calculated AWW. What happens is that the AWW established in the NCP for the weeks Claimant received benefits is, essentially, "recalculated" in hindsight. This application of Section 309(d) to the factual scenario of a claimant who receives workers' compensation benefits for a period of time because of an injury, returns to work, and sustains a new injury within a year of his return, inadvertently penalizes the claimant for returning to work after having received disability benefits. In doing so, it acts as a disincentive to an injured worker to achieve a full recovery and to attempt to re-enter the work force.

This was the issue highlighted by the Court's opinion in *Colpetzer*, which we filed on July 17, 2002, after submission of the original briefs on appeal in the case *sub judice*. The facts in *Colpetzer* were very similar to the case *sub judice*. Claimant was injured in the course of his employment, an NCP was issued with an AWW, and Claimant received compensation. He recovered from this injury, returned to work and, within a year of his return, suffered another work-related injury. Despite sustaining this injury, he continued to work on restricted duty for a few months; however, the magnitude of the injury ultimately resulted in his being placed on total disability. When Section 309(d) was applied to calculate his AWW after the second injury, the AWW was less than it had been after the first injury. Claimant filed a modification petition seeking to modify the AWW set forth in the second NCP, arguing that his wages were artificially low during the fifty-two weeks preceding his second injury because of his other disability. The Court, in *Colpetzer*, recognized this problem and was troubled by it. It addressed the issue by, implicitly, invoking equitable principles when it directed that the AWW established prior to Claimant's return to disability should be used in determining the AWW for the more recent injury. It relied, heavily, on a recent Supreme Court opinion, *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000).

The *Triangle* case concerned the calculation of an AWW for an employee who was injured while performing concurrent employment with two different employers.[5] Although recognizing that a different subdivision of the statute was applicable, Senior Judge Mirarchi found certain general notions expressed in *Triangle* to be of assistance in determining the issue before the Court. Notably, he observed that the *Triangle* Court stated that, because the Act seeks to compensate injured workers for the ongoing loss of earning capacity resulting from work-related injuries, a reasonable assessment of a claimant's pre-injury ability to generate future earnings needs to be made. As our Supreme Court stated in *Triangle*:

> The mechanics of the legislative scheme demonstrate the General Assembly's intention that the baseline figure

---

5. Thus, it did not involve Section 309(d) of the Act, but rather Section 309(e), which pertinently states, "where the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as earned from the employer liable for compensation."

from which benefits are calculated should reasonably reflect the economic reality of a claimant's recent pre-injury earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment. The Legislature ameliorated potential unfairness that might otherwise accrue to employers in this assessment by adjusting the "look back" according to the nature of the employment, *see* 77 P.S. § 582; by employing a substantial percentage-based reduction of the average weekly wages in the resulting calculation of actual benefits, *see* 77 P.S. §§ 511–512; and in the underlying trade-off between loss spreading and insulation of employers from tort liability inherent in the workers' compensation system. See generally 2 A. Larson, The Law of Workmen's Compensation, § 60.31(c), at 10–751–52 (1993).

*Id.* at 548, 746 A.2d at 1112.

Thus, based upon the rationale the Supreme Court set forth in *Triangle,* Judge Mirarchi concluded in *Colpetzer* that:

Nothing in Section 309 establishes that an employee's period of disability, with its established average weekly wage, is to be excluded from a calculation of the employee's average weekly wage.

*Colpetzer,* 802 A.2d at 1238. He further stated:

Section 309(d) does not address the circumstance where an employee is unable to work during the fifty-two week period preceding the work injury because of injury or other cause and thus does not receive wages that actually reflects the reality of the employee's earning potential. . . . In the case of an employee who is absent from work because of a work-related disability, we note that the method to determine the reality of the employee's earning potential during the time of disability is obvious. By virtue of the fact that the employee is receiving disability benefits, his or her average weekly wage during this period has already been established. Thus, it is a simple matter of using an established average weekly wage for the period when the employee is on disability as a gauge to reflect the reality of the employee's earning potential during that time.

*Colpetzer,* 802 A.2d at 1237 (footnote omitted).

In *Merkle,* we affirmed the employer's calculations of the AWW under Section 309(d). There, the employer had used the artificially low wages the claimant had received due to his periods of disability during the prior four consecutive thirteen-week periods. However, the argument put forth was that, during those periods, claimant was not employed because he was not actually working and, hence, the times that he was receiving benefits should not have been used in calculating his AWW. The claimant did **not** argue, in the alternative, that, even if employed, the resultant calculations produced an artificially low wage that was not truly reflective of his AWW and, in fact, served to penalize him. Because those arguments were not made, the *Merkle* Court did not concentrate on the harsh result, but only on the legal question of whether the claimant was "employed" while receiving disability benefits.

Nonetheless, the unfortunate precedential effect of this decision was to impose a non-statutorily based penalty on the claimant for the misfortune of sustaining another injury so soon after attempting a return to the workforce. It is clear to us that the precedential rule derived from *Merkle,* which we applied in our panel decision in the instant case, is in conflict with the precedential rule derived in *Colpetzer.* Upon en banc review of the *Zerby* issue, with the benefit of the issues raised

and addressed in *Colpetzer* that were not directly raised in *Merkle*, we conclude that the method of AWW calculation for the second injury utilized in *Colpetzer* was correct, and that the method used in *Merkle* was in error. Although Judge Mirarchi, in *Colpetzer*, eloquently sets forth solid policy and equitable bases for the outcome reached, we believe there is an even stronger legal basis for employing the AWW calculation used in *Colpetzer*.

Section 309(d) sets out the method to "calculate" a claimant's AWW. As noted earlier, the method for calculation relies on determining the total wages for each of the four thirteen-week periods preceding the injury. Typically, in evaluating a claim, the WCJ does not have the benefit of any prior determination as to the wages for any part of the four thirteen-week periods for which the total wages must be calculated. In these circumstances, based upon the relevant evidence presented, the WCJ applies the formula set forth in 309(d) to calculate the AWW for each of the four thirteen-week periods, using the highest three calculations to then compute the final average weekly wage. However, the factual scenarios raised in *Zerby, Colpetzer* and *Merkle* set forth the less typical situation in which there has been a prior determination from within the worker's compensation system as to the average weekly wage for the time period defined in 309(d).

Under Section 423 of the Act[6], an AWW, which is set forth in the NCP, cannot be modified unless it was materially incorrect.[7] In this case, there is no allegation that the AWW in the original NCP was incorrect at the time it was established. Thus, applying Section 309(d) in a way that requires a *recalculation* of the AWW previously established in the NCP, without a showing that the original AWW was materially incorrect, presents a conflict with Section 423 of the statute. We note that, "[e]very statute shall be construed, if possible, to give effect to all its provisions." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a); *see also City of Wilkes–Barre v. Ebert*, 22 Pa.Cmwlth. 356, 349 A.2d 520 (1975). Whenever a general provision in a statute is in conflict with a specific provision in the same or another statute, the two are to be construed, if possible, so that effect can be given to both. Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933; *see also Commonwealth v. Snyder*, 688 A.2d 230 (Pa.Cmwlth.1996). By applying Section 309(d) to calculate a new AWW, but not to *re* calculate an AWW that was previously determined, we can pay tribute to these principles and accordingly, we do so.

As Judge Mirarchi cogently and correctly wrote in *Colpetzer*:

> Our Supreme Court has determined that the intent of Section 309 is to establish a baseline figure from which benefits are calculated that *reasonably reflects* the *reality* of the claimant's pre-injury earning experience as a predictor of *future earning potential*. Indeed,

---

6. Section 423 of the Act, 77 P.S. § 771, provides:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

7. If the AWW had been decided by order in a contested proceeding, collateral estoppel would apply to prevent a modification of that determination. Even in the absence of an order, however, the law is clear that an AWW previously set, cannot be modified unless it was materially incorrect.

the Court noted in *Triangle Building Center*, that the Act, generally, required that a reasonable assessment be made of a claimant's pre-injury ability to generate *future* earnings. Thus, Section 309 "directs the focus to the employee's past performance, often measured over a period of time, as a gauge for determining this future earning potential." In line with these principles, we have held that Section 309 is not to be interpreted narrowly or strictly when the result would be an artificially low average weekly rate, unreflective of the reality of a claimant's pre-injury earnings experience.

*Colpetzer*, 802 A.2d at 1236 (citations omitted).

To summarize, in cases where Section 309(d) applies, use of the previously established AWW is required by Section 423 and is more reflective of the reality of employee's earnings. Furthermore, this statutory interpretation does not inadvertently punish claimants who suffer another injury after returning from a previous disabling work-related injury. To the extent *Merkle* conflicts with our holding today, it is expressly overruled.

Accordingly, based on the foregoing discussion, we affirm the order of the Board to the extent that it directs that Section 309(d) be applied to calculate Claimant's AWW, but reverse with regard to the calculation of the average weekly wage and remand for recalculation in accordance with the discussion in this opinion.

### ORDER

**NOW,** April 14, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed insofar as it held that Section 309(d) should be applied and reversed with regard to the calculation of the average weekly wage. The matter is remanded to the Board for further remand to the WCJ to recalculate Zerby's average weekly wage, based in part on the established average weekly wage for that period of time when Zerby was not receiving wages because of a work-related disability.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. David Zerby (Claimant) argues that the Workers' Compensation Appeal Board (WCAB) erred in calculating his average weekly wage (AWW) pursuant to section 309(d) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d). Claimant maintains that the WCAB should have calculated his AWW pursuant to section 309(d.1) of the Act, 77 P.S. § 582(d.1). The majority agrees with the WCAB, but I agree with Claimant.

### I. Statutory Provisions

Sections 309(d) and 309(d.1) of the Act, 77 P.S. §§ 782(d) & 782(d.1), provide as follows:

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a) [weekly], (b) [monthly] or (c) [yearly], the average week wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(d.1) If the employee has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the av-

erage weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

It is apparent that, on its face, section 309(d) of the Act is a general provision that applies to any situation not covered by subsections (a), (b) and (c). Section 309(d.1) of the Act is a special provision that applies where the employee has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two week period immediately preceding the injury. Thus, if section 309(d.1) is applicable, that section prevails and is construed as an exception to the general rule. Section 1933 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933.

### A. Legislative Intent

In considering whether section 309(d.1) applies here, it is necessary to keep in mind that the ultimate goal of the workers' compensation program is to make the injured employee whole. *Colpetzer v. Workers' Compensation Appeal Board (Standard Steel)*, 802 A.2d 1233 (Pa.Cmwlth. 2002). Moreover, the Act must be liberally construed in favor of the injured employee to accomplish the remedial and humanitarian purposes of the Act. *Id.*

In addition, it is important to remember that the purpose of section 309 of the Act is to establish a baseline figure from which benefits are calculated that reasonably reflect the reality of a claimant's *pre-injury* earning experience as a predictor of future earning potential. *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000); *Colpetzer.* In other words, the task in construing section 309 of the Act is to determine the earning capacity of a claimant who has not yet been injured.

### B. Relevant Statutory Definition

Section 309(d.1) of the Act applies if the "employee" has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury. Section 104 of the Act defines the term "employee" as "[a]ll natural persons who perform services for another for valuable consideration." 77 P.S. § 22. In other words, "employee" in section 309(d.1) of the Act refers to a person who is actually performing work and earning wages.[1] This definition of the word "employee" means that, in calculating an AWW, it is necessary to exclude periods where the employee was not performing services for valuable consideration. This construction of the word "employee": (1) is consistent with the purpose of section 309 to establish a realistic predictor of the earning potential of an uninjured claimant; (2) is consistent with the remedial and humanitarian purposes of the Act; and (3) fulfills the ultimate goal of the Act to make the injured employee whole. *See Triangle Building Center; Colpetzer.*

### C. Application

Having considered the purpose of the Act, the purpose of section 309 of the Act and the statutory definition of "employee," I conclude that section 309(d.1) of the Act applies where the employee has not per-

---

1. Compare section 306 of the Act, which states that disability benefits shall be a percentage of the "wages of the injured employe as defined in section 309 . . . ." 77 P.S. § 511. Thus, the statute makes a distinction between an "employee," who does not receive benefits because he or she is performing services for valuable consideration, and an "injured employee," who is entitled to benefits because he or she is *not* working.

formed services for valuable consideration for at least three consecutive periods of thirteen weeks calendar weeks in the fifty-two weeks immediately preceding the injury. Thus, where the employee has *not* performed services for valuable consideration for three consecutive periods of thirteen weeks due to a prior work-related injury, section 309(d.1) would apply.

## II. Prior Case Law

### A. Norton

In *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa. Cmwlth.2000), this court held that the word "employed" in section 309(d.1) of the Act is not limited to the actual days an employee works for wages, but encompasses the period of time that an employment relationship is maintained between the parties. I certainly agree that the word "employed" in section 309(d.1) refers to the maintenance of an employment relationship. Indeed, an employment relationship includes, but is not limited to, situations where: (1) the employee performs services for wages; and (2) the employee receives benefits from the employer during a period when the employee does not work, so long as the employee has not resigned or been terminated. I note that the claimant in *Norton* was able to perform services for valuable consideration;[2] thus, I would clarify that the word "employed" in section 309(d.1) means maintaining an employment relationship as an employee who is able to perform services for valuable consideration.

### B. Merkle

In *Merkle v. Workers' Compensation Appeal Board (Hofmann Industries)*, 796 A.2d 1034 (Pa.Cmwlth.2002), the claimant sustained a work injury and returned to work, but the claimant sustained a second work injury shortly thereafter. The claimant's AWW was calculated under section 309(d) of the Act. The claimant argued that his AWW should have been calculated under section 309(d.1) of the Act because the word "employed" in section 309(d.1) means "worked." *Id.* We rejected the claimant's argument as contrary to *Norton*. *Id.*

In deciding *Merkle*, we did not consider whether the statutory definition of the word "employee" would dictate a different result because Merkle only questioned the meaning of the word "employed." Because we ordinarily do not address arguments that are not raised by petitioners, there is no reason to overrule *Merkle*; however, considering our holding here, *Merkle* is limited to the particular issue that was raised.

### C. Colpetzer

In *Colpetzer*, as in *Merkle*, the claimant sustained a work injury and, after returning to work, suffered a second injury. The claimant's AWW was calculated under section 309(d) of the Act, but the claimant argued that section 309(d.1) of the Act

---

2. The claimant was able to work, but the business was shut down. The employment relationship was maintained because, during the shut down, the employer paid the claimant a vacation benefit. *Norton.* Similarly, in *Triangle Building Center*, where the claimant was temporarily laid off, the employment relationship was maintained because the claimant called in daily to see if work was available. *Cf. Kandala v. Unemployment Compensation Board of Review*, 88 Pa. Cmwlth. 199, 489 A.2d 293 (1985) (holding that a furloughed school teacher is not unemployed during summer months where the teacher receives wages for those months); *cf. also Easter Seal Society for Handicapped Children and Adults v. Unemployment Compensation Board of Review*, 720 A.2d 217 (Pa. Cmwlth.1998) (holding that an academic year employee is not unemployed over summer vacation).

should have been used to calculate his AWW. We rejected the claimant's argument under *Norton*.

Although we acknowledged the purpose of the Act and the purpose of section 309 of the Act, we did not consider whether the statutory definition of the word "employee" would dictate a different result. Had we done so, we might have reached a different result. Nevertheless, because we addressed only the issue raised in *Colpetzer*, there is no reason to overrule it. We need only indicate that the holding in *Colpetzer* is limited in precedential value.

### III. Section 423

The majority essentially holds that the AWW set forth in a notice of compensation payable (NCP), as long as it has not been modified under section 423 of the Act, 77 P.S. § 771, is the earning capacity of an employee *forever*. Indeed, the majority suggests that an AWW may not be recalculated for a subsequent injury under section 309(d) of the Act without a showing that the original AWW is materially incorrect. Otherwise, according to the majority, section 309(d) of the Act would conflict with section 423 of the Act. (Majority op. at 11.) I disagree.

To begin, Article IV of the Act governs procedure in workers' compensation proceedings. Section 423 of the Act simply sets forth the procedure for correcting errors in the AWW shown on a NCP. Article III of the Act governs liability and compensation, and section 309 of the Act simply sets forth the method of computing an injured employee's wages. There is no conflict between the two provisions. Moreover, the AWW shown on an initial NCP is related solely to the original injury; it is not affected in any way by the calculation of the AWW for a second injury, which would appear on a subsequent NCP.

Judge McGINLEY joins.