**Carolyn R. MENSAH, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (NORRELL TEMP AGENCY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 1998.

Decided Aug. 12, 1998.

---

Carolyn R. Mensah, Petitioner, for herself.

Ernest J. Bernabei, III, Philadelphia, for respondent.

Before COLINS, President Judge, and SMITH, J., and MIRARCHI, Jr., Senior Judge.

COLINS, President Judge.

Carolyn Mensah petitions for review of the order of the Workers' Compensation Appeal Board reversing a workers' compensation judge's award of benefits. The Board concluded that Mensah failed to prove that she suffered a work-related injury in the course and scope of her employment.

In August 1992, Mensah's employer, Norrell Temp Agency, assigned her to work for the American Red Cross. Mensah claims that she was injured on August 6, 1992 during the course of her employment when she drank a cup of coffee that had been tainted with a barbiturate. Specifically, Mensah testified that she prepared the coffee herself. After taking one mouthful, Mensah testified, she began to experience burning and dryness of the mouth and throat, severe headache, and distorted vision. Although Mensah managed to work for the remainder of the day, immediately after work she went to a hospital emergency room for medical care.

Mensah filed a claim petition alleging that as a result of ingesting tainted coffee, she sustained internal injuries to her mouth, throat, head, and stomach and aggravation of a pre-existing paranoid psychosis. At a hearing before the judge, Mensah testified on her own behalf, and the employer offered the testimony of Regina Spencer, a Red Cross employee who was allegedly present at the time Mensah allegedly drank tainted coffee.[1]

---

1. The employer also offered into evidence the deposition testimony given by Mensah in a third-party action against the employer and Red Cross; the judge admitted this deposition solely for the

The judge denied the petition because Mensah failed to produce medical testimony in support of her claim.[2] On appeal, the Board remanded, in the interest of justice, to give Mensah another opportunity to produce medical testimony.

On remand, Mensah offered into evidence written interrogatories answered by her treating physician, Dr. Raymond Silk, and a treating psychiatrist, Dr. Maurie Pressman.[3] The judge concluded that Mensah had met her burden of proving a work-related injury and granted benefits. The judge accepted as credible Mensah's testimony that she ingested coffee tainted with barbiturates.[4] The judge also accepted as credible the written depositions of Dr. Silk and Dr. Pressman, which the judge characterized as unequivocal and as establishing that Mensah drank tainted coffee at work that rendered her totally disabled and aggravated her pre-existing mental disorder. (Findings of Fact Nos. 18 and 19.) The Board reversed, concluding that Mensah failed to meet her burden of proof, referencing lab results, obtained by Mensah, indicating that the coffee she drank contained no barbiturates.[5]

On appeal,[6] Mensah essentially argues that the Board erred in reversing the judge because the Board relied solely on the negative lab results, which, she claims, are unreliable. Mensah argues that she met her burden of proving a work-related injury and disability.

In order to establish a right to compensation, a claimant must prove that she was injured during the course of her employment. Section 301 of the Act, 77 P.S. § 411(1). Where the causal connection between the injury and the disability is not obvious, the claimant must present unequivocal medical testimony. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corporation Maple Creek Mine)*, 534 Pa. 191, 626 A.2d 1144 (1993).

In this case, Mensah has failed to prove a work-related injury and disability. Mensah testified that she sought emergency treatment on August 6, 1992 at Graduate Hospital for internal injuries to her mouth, throat, and stomach and severe headache pain caused by her drinking tainted coffee at work. Mensah testified that emergency room staff did blood studies and gave her a prescription for "Donnatal" to coat her throat and stomach. (11-. 23–92 Notes of Testimony, p. 14.) Mensah presented no medical evidence related to this treatment.

Although the judge found Dr. Silk's medical testimony to be credible, the judge's findings mischaracterize the substance of Dr. Silk's answers. The written deposition testimony of Dr. Silk is not competent medical evidence that Mensah's disability was causally connected to a work-related injury. The

purpose of impeaching Mensah's credibility. The judge rejected this testimony as less credible than the other evidence of record. (Finding of Fact No. 16.)

2. At the time of the hearings on the claim petition, in any claim involving more than 25 weeks, the claimant had to produce medical testimony; medical reports and letters written by the claimant's physicians were not admissible as substantive evidence. Section 422 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 835. As amended in 1993, the legislature increased the time period from twenty-five weeks to fifty-two weeks and made medical reports admissible unless the opposing party objects to admission.

3. The judge admitted the written depositions over the objections of counsel for the employer that medical evidence must be in the form of oral deposition or testimony under the rules for practice before judges, 34 Pa.Code § 131.62. The judge gave employer's counsel sixty days in

which to depose the physicians or to raise objections to the content of the written depositions.

4. The judge also found, "The fact that Claimant alleged similar incidents at other times does not negate the credibility given to her testimony concerning the August 6, 1992 incident." (Finding of Fact No. 17.) Mensah referred to these "incidents" in her testimony; apparently, Mensah had made allegations that she was poisoned while working for two other employers, but in both instances had no medical or other evidence to support her claims.

5. Mensah testified that she took a sample of the coffee left in her cup and had it tested independently. A copy of the lab results was attached to the written medical depositions.

6. Our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether the judge committed constitutional violations or errors of law. 2 Pa.C.S. § 704.

written deposition of Dr. Silk indicates that he first examined Mensah on August 15, nine days after the alleged incident.[7] Interrogatories about Mensah's blood levels all referenced blood test results dated either well before or well after August 6, 1992,[8] and Dr. Silk testified that rises in Mensah's globulin levels were "not necessarily" related to any foreign substances in her body. (Silk Deposition, p. 10.) Dr. Silk agreed that barbiturates can cause some of the symptoms Mensah complained of on August 6, 1992 and that barbiturates can cause serious health problems. (Silk Deposition, pp. 13, 14, 20.)

Contrary to the judge's finding, Dr. Silk's testimony does not establish that Mensah drank tainted coffee; rather, Dr. Silk answered in the negative when asked whether he believed that Mensah had voluntarily ingested barbiturates. Dr. Silk agreed that Mensah told him she had been injured by tainted coffee and agreed that urinalysis test results from August 13, 1992 indicated the presence of barbiturates in Mensah's urine. (Silk Deposition, p. 20.) He agreed with her statement that her consumption of barbiturates caused her "a disabling unwellness." (Silk Deposition, p. 23.) At most, Dr. Silk's testimony provides a causal connection between an unspecified disability and Mensah's consumption of barbiturates; except for the urinalysis, the test results upon which Dr. Silk's testimony is based are not sufficiently related to the events of August 6, 1992.

■ Similarly, the written deposition testimony of Dr. Pressman does not establish that Mensah's consumption of tainted coffee aggravated her pre-existing mental disorder and rendered her totally disabled. Dr. Pressman examined Mensah on August 25, 1992 and diagnosed her as suffering from a paranoid psychosis that began in August 1990. Dr. Pressman declined to express an opinion as to whether Mensah drank coffee tainted with barbiturates or as to whether her complaints actually resulted from drinking tainted coffee.[9] Dr. Pressman's testimo-

ny establishes only that at the time of the alleged injury, Mensah was disabled and in need of psychotherapy and psychopharmacology. (Pressman Deposition, p. 18.)

■ We disagree with Mensah's argument that the Board reversed solely on the basis of the lab report showing that the coffee was not tainted. The Board concluded that Mensah did not meet her burden of proving a work-related injury and that the evidence of record did not support the judge's findings. The Board mentioned the lab report to illustrate its point that the Board's findings with respect to the medical testimony were not supported by substantial evidence. Mensah placed the report into the record and referred to the report in her own testimony and in her interrogatories to her medical witnesses. At the very least, the report constitutes an admission against interest. The lab test results directly contradict Mensah's contention that she consumed the barbiturates at work, and she offered no expert testimony that would explain the contradiction. Mensah cannot now, on appeal, assert that the test results are inconclusive and attempt to explain away the contradiction.

In conclusion, Mensah did not meet her burden of proving a work-related injury. Although credible, the substance of the medical testimony does not establish a connection between Mensah's disability and a work-related injury. Mensah failed to prove that she was injured during the course of her employment. Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 12th day of August, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

7. This evidence conflicts with Mensah's testimony that she saw Dr. Silk on August 7, the day after the alleged injury.

8. The blood studies were dated September 1992, October 1978, May 1991, and January 1994. (Silk Deposition, pp. 7–9.)

9. "Q. [A]re you of the opinion that the coffee imbibed by Claimant did, in fact, contain barbiturate?" "A. Outside my field of expertise." (Pressman Deposition, p. 7.)