## AKERS NATIONAL ROLL CO., Petitioner

v.

## WORKERS' COMPENSATION APPEAL BOARD (WHALEY), Respondent.

Commonwealth Court of Pennsylvania.

Argued May 9, 2006.
Decided June 27, 2006.

would be protected from disclosure by the personal security exception need not be addressed by the Court.

Harry J. Klucher, Pittsburgh, for petitioner.

Darren K. Parr, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Akers National Roll Company (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the petition to review compensation benefits filed by Robert Whaley (Claimant). We affirm.

Claimant sustained a work-related injury on May 6, 2002. Employer issued a notice of temporary compensation payable recognizing Claimant's work injury as a low back sprain. By operation of law, the temporary notice of compensation payable was converted to a notice of compensation payable. Claimant received benefits at the rate of $417.16 per week based on an average weekly wage of $625.74.

On August 27, 2003, Claimant filed a petition to review compensation benefits along with a penalty petition, alleging that Employer incorrectly calculated Claimant's benefits. Claimant's allegations were based on his concurrent employment as a unit griever with his union (Union) at the time of his work injury.

During the course of litigation, the parties stipulated that if Claimant's Union wages were included in his average weekly wage calculation, Claimant would have an average weekly wage of $692.63 with a corresponding compensation rate of $461.78.

In support of his petition, Claimant testified that he was elected to the Union griever position in April, 2001 by fellow Union members. As a Union griever, Claimant would file grievances, settle disputes with the company and negotiate contracts. Claimant stated that on days he was working maintenance for Employer he would sometimes have Union business to perform. On those days, Claimant would

tell his supervisor he had Union business and he would then "swipe out" from his maintenance job and begin his Union duties. Employer did not pay Claimant for the time he spent doing Union activities. Instead, Claimant would notify Union of the hours he spent doing Union business and Union would pay him for the hours he missed working for Employer. The wage rate paid by Union was the same as that provided by Employer.

After his work-related accident, Claimant testified that he continued to do Union work. Claimant was able to perform Union work from his home. Union did not pay Claimant for these services because Union only paid him when he lost time from work. Because Claimant was no longer losing time from work inasmuch as due to his work-related injury he was receiving workers' compensation, he in effect did not lose any time from work and therefore did not receive reimbursement from Union.

Claimant further testified that although he still holds the position of griever, he has not performed those duties since October, 2003. At that time, the new Union president told him that according to policy, he could no longer perform grievance duties because he was not physically working on Employer's premises. Claimant also stated that the reason he no longer performed union work was because Employer prohibited him from entering company property to conduct grievances.

Christopher Schiano (Schiano) testified on behalf of Employer. According to Schiano it was Union's policy, not Employer's policy, which barred Claimant from working as a griever as of October, 2003. Schiano testified that he never told Claimant that he was not permitted on Employer's premises.

Based on the testimony presented, the WCJ found that the duties of a griever are sedentary and that Claimant was capable of performing such duties. After his accident, Claimant did perform griever duties for which he did not receive any wages from Union. Employer never prohibited Claimant from working as a griever. It was the decision of the new Union president in October, 2003 to prohibit Claimant from working as a griever because existing policy required that a griever actually be working on the premises.

The WCJ concluded that Claimant met his burden of showing that he was concurrently employed by both Employer and Union at the time of injury. Furthermore, Claimant's compensable disability caused his loss of wages from his concurrent employment with Union and Claimant did not have a burden of proving by medical evidence that he was physically disabled from performing his concurrent employment. As such, the WCJ granted Claimant's petition for review of compensation benefits. The WCJ, however, denied Claimant's penalty petition.

■ Employer appealed to the Board arguing only that the WCJ erred in modifying Claimant's total disability benefits to include Claimant's concurrent employment with Union. The Board affirmed the decision of the WCJ and this appeal followed.[1]

■ Employer initially argues that it was error to grant the review petition because Claimant was not physically disabled from performing his concurrent job with Union as a result of his work injury.

1. Our review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings are supported by substantial evidence. *O'Donnell v. Workers' Compensation Appeal Board (United Parcel Service)*, 831 A.2d 784 (Pa.Cmwlth.2003).

We initially note that in accordance with Section 309(e) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(e) where the employee "is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation." Thus, in determining Claimant's weekly wage, it is proper to consider wages Claimant earned from both Employer and Union.

In *Miller v. Workmen's Compensation Appeal Board (Midlantic Coast Delivery System),* 661 A.2d 916 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 543 Pa. 733, 673 A.2d 338 (1996), this court reiterated that "where a claimant holds more than one job at the time of a work-related injury, the average weekly wage must be calculated based on the wages from all of his or her other jobs, whether the claimant is disabled from the other jobs or not, in accordance with Section 309(e) of the Act." This court further stated, however, that where the claimant is not disabled from the other jobs, it is proper to place the claimant on partial disability, thereby reducing the total disability benefit by the wages earned from the jobs from which the claimant is not disabled.

Here, Employer argues that Claimant's work-related injury did not disable him from his concurrent job with Union as a griever. As such, Employer argues that Claimant is not entitled to temporary total disability benefits based on a wage loss from both his time of injury job with Employer and his concurrent Union job.

Claimant responds that he is entitled to temporary total disability based on wage loss from his Union position because his disability, i.e., loss of earning power from his Union job was directly caused by his work injury. In *Reifsnyder v. Workers' Compensation Appeal Board (Dana Corporation),* 584 Pa. 341, 883 A.2d 537, 545 (2005)[2], the Supreme Court stated the following:

> '[T]he Act seeks to compensate claimants for the ongoing loss in earning capacity resulting from their injuries; therefore, some reasonable assessment must be made of claimants' pre-injury ability to generate further earnings.' [T]he mechanics of the legislative scheme revealed an intention that the 'baseline figure from which benefits are calculated should reasonably reflect the economic reality of a claimant's ... earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment.'

(Citation omitted.) Here, the "economic reality of claimant's earning experience" is attained by including the wages he earned with Union. In accordance with Section 309(e) of the Act, the average weekly wage of a claimant must be computed based on wages from all jobs. Because Claimant is disabled from performing his job with Employer, and such disability prevents him from performing his concurrent job with Union, as such requires that Claimant actually be working on Employer's premises,

---

**2.** *Reifsnyder* involved the calculation of the average weekly wage of long term employees who were subject to periodic layoffs. The employees, due to lay-offs, did not have continuous wage earnings for a complete thirteen week period in the year preceding injury. Although that case involved the calculation of the weekly wage under Section 309(d), the Court citing *Triangle Building Center v. Work-* *ers' Compensation Appeal Board (Linch),* 560 Pa. 540, 746 A.2d 1108 (2000), which did involve Section 309(e), reiterated that the Act is remedial in nature and intended to benefit the worker. The legislature intended that the baseline figure from which benefits are calculated should reflect the economic reality of an employee's pre-injury earning experience.

the inclusion of Claimant's concurrent employment with Union reflects the "economic reality of claimant's earning experience."

Furthermore, the reality of Claimant's earnings is that he in essence split his time working for Employer and Union. Claimant "clocked out" from Employer's job when he needed to perform Union duties and Union paid him for hours lost with Employer. To not include the Union pay would misrepresent Claimant's true earnings.

■ Next, we must determine whether Claimant has the burden of proving disability from his concurrent job by way of unequivocal medical evidence.

Employer argues that the evidence shows that Claimant, despite his work-related injury, was clearly capable of performing his concurrent job from a physical standpoint. In order to establish entitlement to temporary total disability benefits, Employer argues that Claimant bore the burden of producing medical evidence indicating that his work injury physically precluded him from performing his concurrent Union job.

Employer argues that a claimant, in proving the existence of a compensable injury, must show that such injury "rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured." *Scott v. Workmen's*

*Compensation Appeal Board (Jeanes Hospital),* 732 A.2d 29, 34 (Pa.Cmwlth.1999) (citation omitted), *petition for allowance of appeal denied,* 561 Pa. 681, 749 A.2d 474 (2000).[3] Here, Claimant held two different jobs at the time of his work injury, a maintenance position with Employer and a griever position with Union. Although Claimant could not physically perform his maintenance position because of the work injury, Employer argues he was not physically incapable of performing the union job as a result of the work injury. As such, there is no apparent causal relationship between Claimant's work injury and his alleged disability from performing his concurrent job with Union. In such circumstances where there is no obvious causal connection, Employer argues that a claimant must produce medical evidence establishing the causal relationship, *Mensah v. Workers' Compensation Appeal Board (Norrell Temp. Agency),* 716 A.2d 707 (Pa. Cmwlth.1998), *petition for allowance of appeal denied,* 558 Pa. 603, 735 A.2d 1270 (1999).[4] Here, Employer maintains Claimant failed to meet his burden.

We agree with Claimant, however, that there is no case law suggesting that when an employee has concurrent employment and employment at the primary job predicates employment at the second job, that he must prove disability from his concur-

---

3. In *Scott,* the claimant sought benefits alleging a psychiatric disability due to abnormal working conditions. The claimant, who performed accounting duties, acknowledged that although she could no longer work for the employer, she did perform accounting duties for another employer before and after her work-related injury. Because the claimant was capable of performing accounting duties, this court determined that she did not meet her burden of proving that her injury rendered her incapable of performing the type of work she was engaged in when injured.

4. In *Mensah,* this court determined that the claimant did not meet her burden of establishing through medical testimony a connection between her disability and work-related injury. Here, Employer has already accepted that Claimant is disabled from his job with Employer and thus no medical evidence was necessary. Moreover, inasmuch as *Mensah* did not involve concurrent employment, that case does not support Employer's contention that medical testimony is necessary to prove that a claimant's disability, i.e., loss of earning power, from concurrent employment arose as result of his work injury with Employer.

rent job by way of unequivocal medical evidence. *Mensah* is not a case which involved concurrent employment. Here, Employer has already acknowledged a work injury disabling Claimant from his job with Employer. In this case, the facts reveal that such disability from his job with Employer prohibits Claimant's ability to perform his concurrent employment with Union.

In accordance with the above, the decision of the Board is affirmed.

## ORDER

Now, June 27, 2006, the order of the Workers' Compensation Appeal Board, in the above-captioned matter, is affirmed.