IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester County Hospital and    :
Babb Absence & Safety Integrated    :
Services (BASIS), Inc.,    :
           Petitioners    :
    :
           v.    :    No. 1345 C.D. 2022
    :    Submitted: December 4, 2023
Eileen Bangert (Workers'    :
Compensation Appeal Board),    :
           Respondent    :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT           FILED: January 29, 2024

           Chester County Hospital and Babb Absence & Safety Integrated Services (BASIS), Inc. (collectively, Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting compensation benefits to Eileen Bangert (Claimant) for her back injury and denying her penalty petition. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). On appeal, Employer argues that the Board erred because the WCJ credited an equivocal medical opinion; the WCJ capriciously disregarded evidence; and the WCJ did not issue a reasoned decision. For the reasons to follow, we affirm the Board's decision.

           Claimant worked as a registered nurse for Employer. On March 23, 2021, while examining an infant, she injured her lower back. Employer sent

Claimant for physical therapy, and on April 12, 2021, issued a notice of compensation denial.

Claimant then filed a claim petition under the Workers' Compensation Act (Act),[1] alleging that on March 23, 2021, she sustained an aggravation to her prior work-related back injury. Claimant also filed a penalty petition alleging that Employer violated Section 406.1(a) of the Act, 77 P.S. §717.1(a),[2] by not investigating her claim. The matter was assigned to a WCJ.

Claimant testified by deposition and in person before the WCJ. She stated that she worked for Employer in a light-duty position in the hospital nursery because of an earlier work injury to her back. That injury occurred in 1994, while Claimant was lifting an electrocardiogram (EKG) machine. After physical therapy, injections, and medication, she underwent back surgery in June and October 1995. Although Claimant returned to work in December 1997, she never fully recovered from this injury.

Claimant testified that on March 23, 2021, around 2:30 p.m., she placed a newborn infant in a crib for a head-to-toe assessment. When she turned the baby onto its stomach, she experienced a sharp pain in her lower back that left her "unable to straighten back up." Claimant Depo. at 12; Reproduced Record at 84a (R.R. __).

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

[2] Section 406.1(a) of the Act, added by the Act of February 8, 1972, P.L. 25, states, in relevant part:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer.

77 P.S. §717.1(a).

As the pain dissipated, she was able to stand back up and finish her shift. However, on the ride home, Claimant experienced "stabbing pains down to [her] toes in both feet that was not letting up." Claimant Depo. at 14; R.R. 86a. The following day, Claimant reported this injury to Employer.

Claimant initially treated at Occupational Health, which prescribed exercises and pain medications. She then saw Ronald M. Lieberman, D.O., at the Injury Care Center, and he ordered a computed tomography (CT) scan and a magnetic resonance imaging (MRI) scan. She also saw Joseph Richards, D.O., at the Injury Care Center for nerve root injections.[3]

Claimant testified that as a result of the incident on March 23, 2021, she suffers "pain that radiates [] into [] both legs." Claimant Depo. at 19; R.R. 91a. Prior to this incident, this type of pain could be treated with ice. Now, it cannot.

Claimant presented the deposition testimony of Dr. Lieberman, board-certified in physical medicine, rehabilitation and pain medicine. He first saw Claimant on April 12, 2021. Dr. Lieberman described Claimant's "usual state of health" as having manageable, chronic back pain and being able to work. Lieberman Depo. at 8; R.R. 141a. Her chronic pain was caused by an L4-L5 disc herniation for which she underwent two hemilaminectomy procedures. Since the incident of March 23, 2021, which caused Claimant to freeze for a minute, Claimant has not returned to work.

During Claimant's physical examination, Dr. Lieberman found a "loss of light touch on the outside of both calves, weakness [in] . . . her ability to lift her foot up, or dorsiflexion weakness, on the left side and muscle spasms in the lumbar paraspinal muscles." Lieberman Depo. at 10; R.R. 143a. Dr. Lieberman ordered

---

[3] Claimant has received injections in the past, on average twice a year. WCJ Decision at 5, Finding of Fact (F.F.) No. 5.h.

3

several diagnostic tests. A CT scan showed a disc bulge at the L4-L5 segment and bilateral facet hypertrophy, which Dr. Lieberman described as enlarged joints in the spine caused by surgery. An MRI scan also showed a thickening of the joints and ligaments on the right side. He believed that Claimant suffered an aggravation of her prior back injury, explaining as follows: "[Claimant] is bending over the crib, taking care of a baby, she develops back pain, she's frozen. She stands up . . . . The most likely situation to explain her symptoms was that she stood up and rotated to the left." Lieberman Depo. at 15; R.R. 148a. The rotation compressed the L5 spinal nerve in the narrowed spinal canal.

Dr. Lieberman acknowledged that there was no change between Claimant's 2019 MRI and the current one. He explained that a change was not needed to demonstrate a new injury. The MRI showed that she was susceptible to irritation at that level in the spine, and this irritation was manifested by her subjective complaints. He testified that an electromyography (EMG) test of May 10, 2021, confirmed a recent irritation to Claimant's L5 spinal nerve, *i.e.*, an acute injury.

Dr. Lieberman acknowledged that on March 22, 2021, the day before her work injury, Claimant was diagnosed with low back pain, lumbosacral radiculopathy, history of lumbar laminectomy, spinal stenosis in the lumbar region, and degenerative lumbar intervertebral disc. Those diagnoses are almost identical to her current diagnoses, except for her current diagnosis of lumbar radiculopathy. Lumbosacral radiculopathy implies irritation of the S1 spinal nerve. Lumbar radiculopathy, by contrast, implies irritation to all the nerves above the S1 point, including L5, L4, L3, L2 and L1.

4

Dr. Lieberman opined that Claimant sustained a work injury in the nature of an exacerbation of post-laminectomy syndrome, lumbar radiculopathy, and lower back pain. She has not fully recovered from this injury.

Employer introduced the deposition testimony of Christian Fras, M.D., board certified in orthopedic surgery and a specialist in spinal surgery. He testified that Claimant had a long history of back problems. Her treatments included occupational treatment, prescription pain medication, and physical therapy. For a number of years, Claimant has received nerve root injections at the Injury Care Center. At his independent medical examination (IME) of Claimant, she reported low-back and tailbone pain. She also described bilateral buttock pain, pain in both groin regions, right more than the left, and perineal pain. Claimant fell in 2000, and again in 2013. Both incidents further worsened her back pain.

In his physical examination, Dr. Fras found Claimant to have a normal gait and full strength in all muscle groups. Claimant reported diminished sensation in the left calf. His physical tests suggested symptomatic cervical disc herniation or a spinal cord compression. Dr. Fras testified that Claimant's physical examination was objectively normal.

After reviewing Claimant's medical records, Dr. Fras testified that he "was unable to identify within a reasonable degree of medical certainty any injury to have been sustained by [Claimant] on or around March 23, 2021." Fras Depo. at 21; R.R. 223a. He explained that "any such [] injury would be limited to a soft-tissue sprain and strain, such as a low back strain and sprain from which she had, by the time of [his] evaluation, fully recovered." *Id.* He opined that Claimant could return to full-duty work. Dr. Fras disagreed with Dr. Lieberman's interpretation of the medical tests. He testified that the April 2021 CT scan of the lumbar spine

5

showed degeneration but not an acute pathology. This was also true for the MRI and the EMG.

The WCJ granted Claimant's claim petition and denied her penalty petition. The WCJ found that Claimant met her burden of proving that on March 23, 2021, she sustained a work injury in the nature of an exacerbation of post-laminectomy syndrome, exacerbation of lumbar radiculopathy, and exacerbation of lower back pain. The WCJ found the testimony of Claimant credible, and the testimony of Dr. Lieberman more credible and convincing than that of Dr. Fras.

Employer appealed to the Board. It argued that the WCJ failed to issue a reasoned decision by capriciously disregarding substantial, competent evidence. Specifically, the WCJ did not address important facts. First, Claimant exhibited identical symptoms and complaints one day prior to her alleged work injury. Second, her treatment after March 23, 2021, remains the same as before that date. Employer also argued that Dr. Lieberman's testimony was equivocal and legally incompetent.

The Board affirmed the WCJ's decision. The Board found that the WCJ did address Claimant's preexisting diagnoses and treatments. Her chronic back pain was manageable prior to the March 23, 2021, incident but not thereafter. The Board also rejected Employer's challenge to the competency of Dr. Lieberman's opinion.

Employer petitioned for this Court's review.[4]

On appeal, Employer raises three issues. First, Employer argues that the WCJ and the Board erred in finding that Claimant met her burden of proof under

---

[4] This Court reviews the Board's adjudication to determine whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Murphy v. Workers' Compensation Board of Review (Mercy Catholic Medical Center)*, 721 A.2d 1167, 1169 n.1 (Pa. Cmwlth. 1998).

6

the claim petition because Dr. Lieberman's testimony was equivocal and incompetent. Second, Employer argues that the WCJ and the Board capriciously disregarded substantial competent evidence that Claimant was undergoing identical treatment for identical symptoms the day prior to the alleged work injury. Third, Employer argues that the WCJ failed to provide a reasoned decision because he did not reconcile the conflicting evidence on whether a work injury even occurred on March 23, 2021.

By way of background, in a claim petition, the claimant must prove all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 634 A.2d 592, 595 (Pa. 1993). The claimant must prove that she sustained a work injury which resulted in disability, *i.e.,* a loss of earning power. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel/USX Corporation Maple Creek Mine),* 626 A.2d 1144, 1146 (Pa. 1993). Unless the causal connection between an injury and disability is obvious, unequivocal medical evidence is needed to establish that connection. *Mensah v. Workers' Compensation Appeal Board (Norrell Temp Agency),* 716 A.2d 707, 709 (Pa. Cmwlth. 1998).

In assessing the evidence, the WCJ is the ultimate factfinder and "has complete authority over questions of witness credibility and evidentiary weight." *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). The WCJ is "entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Ausburn v. Workers' Compensation Appeal Board (Merrell & Garaguso)*, 698 A.2d 1356, 1358 (Pa. Cmwlth. 1997). On appeal, this Court "is not to reweigh the evidence or review the credibility of witnesses." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Rather, this

7

Court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

With this background, we address Employer's arguments seriately.

In its first issue, Employer argues that Dr. Lieberman's testimony was equivocal because he did not "have a full or complete understanding of the mechanism of Claimant's work injury or extensive and significant past medical history as it related to her lumbar spine dating back to 1994." Employer Brief at 14. Noting that Claimant did not testify about a rotating injury, Employer argues that Dr. Lieberman merely speculated that the "most likely situation to explain her symptoms was that she stood up and rotated to the left." *Id.* (quoting Lieberman Depo. at 15; R.R. 148a). More to the point, Claimant testified that she experienced persistent and constant lower back pain, including left foot drop and radiating leg pain, both before and after March 23, 2021. Dr. Lieberman admitted that Claimant's diagnoses after the March 23, 2021, injury were nearly identical to her diagnoses prior to March 23, 2021, and that her treatment remained unchanged.

Claimant counters that Dr. Lieberman's testimony constituted competent medical evidence upon which the WCJ properly relied. He explained that Claimant's post-surgical anatomy made her susceptible to irritation at the L5 level, as evidenced by her current complaints. At Claimant's visit with Dr. Richards on March 22, 2021, she reported that her back pain was at a 3 out of 10. On April 12, 2021, however, Claimant reported her pain as 7 out of 10. This represented a more than 50% increase in her pain. Further, the EMG results corroborated Dr.

8

Lieberman's opinion that Claimant's chronic condition was worsened by the work injury.

> Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that *in his professional opinion the result in question did come from the assigned cause. . . .* Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985) (emphasis added) (citations omitted). In determining whether medical testimony is equivocal, the entire testimony of the medical witness is considered. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 1997). A medical opinion does not become equivocal on the basis of a single phrase extracted from a deposition. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.)*, 668 A.2d 131 (Pa. 1995).

Viewing Dr. Lieberman's testimony in its entirety, we conclude, as did the Board, that he offered an unequivocal opinion that Claimant's March 23, 2021, work injury consisted of an exacerbation of post-laminectomy syndrome, exacerbation of lumbar radiculopathy, and exacerbation of lower back pain. Dr. Lieberman fully explained how he arrived at those medical diagnoses, which was corroborated by Claimant's testimony, medical records, and his own clinical observations. Further, Dr. Lieberman fully addressed the Claimant's preexisting

chronic back pain and the reason why he determined Claimant suffered a work injury on March 23, 2021.[5]

In effect, Employer argues that the WCJ should have relied on Dr. Fras' medical opinion that Claimant did not suffer from an acute trauma on March 23, 2021. However, the WCJ's credibility determinations are binding on appeal. *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28-29 (Pa. Cmwlth. 2005).

In its second issue, Employer argues that the WCJ ignored substantial evidence of record. Specifically, the WCJ chose to overlook Dr. Lieberman's concessions that (1) Claimant's diagnoses, treatment, and symptoms did not change after March 23, 2021; (2) Claimant experienced chronic low back complaints from 1994 to March 22, 2021; (3) Claimant treated for similar back pain the day before the alleged injury; (4) Claimant's treatment was the same before and after March 23, 2021; (5) Claimant's MRIs between 2018 and 2021 did not change; and (6) Dr. Lieberman's diagnoses were limited to "exacerbations" as opposed to "aggravations."

Claimant counters that Dr. Lieberman fully addressed Claimant's history of low back problems, explaining that they made her susceptible to irritation at the L5 level. He also relied on the EMG test to corroborate his opinion that Claimant's chronic condition had been worsened by the incident on March 23, 2021.

This Court will not disturb a WCJ's findings if there is substantial evidence in the record to support the findings. "Substantial evidence is such relevant

---

[5] Employer makes much of the fact that Dr. Lieberman, apparently, did not know of Claimant's March 22, 2021, treatment and diagnosis at the clinic where he practiced until he was handed that record at his deposition. Employer Brief at 19-20. However, Dr. Lieberman responded to the "surprise exhibit" in a manner that the WCJ found credible.

10

evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In a substantial evidence case, the Court "must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Incorporated v. Workers' Compensation Appeal Board (Verdi),* 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "'it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.'" *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quoting *Minicozzi*, 873 A.2d at 29).

The WCJ did not overlook evidence of Claimant's preexisting conditions. Rather, the WCJ considered the testimony of both medical experts on Claimant's work injury, medical history, and medical records, and he resolved the conflict between them in favor of Claimant. Dr. Lieberman's opinion that Claimant suffered a work injury in the nature of an exacerbation of a prior injury was supported by Claimant's testimony, her medical tests, and his clinical observations. Viewing the evidence in the light most favorable to Claimant as the prevailing party, as we must, we conclude that Dr. Lieberman's medical opinion supported the WCJ's finding that Claimant sustained a work injury on March 23, 2021.

Employer argues that because Dr. Lieberman opined that she suffered "an exacerbation or flare," this did not constitute "a true aggravation of [] Claimant's continuous chronic and physically limiting condition." Employer Brief at 21-22. We reject this contention. An exacerbation of a preexisting condition is sufficient

11

for a claimant to establish her burden in a claim petition. *See generally School District of Philadelphia v. Workers' Compensation Appeal Board (Hilton)*, 84 A.3d 372, 376 (Pa. Cmwlth. 2014).

In its third issue, Employer argues that the WCJ did not issue a reasoned decision because Claimant's condition did not change after March 23, 2021. Claimant had been treated for chronic low back pain since 1994; her treatment did not change in any substantive way; her symptoms are the same; the MRI results, before and after the work injury, are the same; and her diagnosis remains the same.

Claimant counters that the WCJ fully addressed Claimant's treatment before and after March 23, 2021. Because her prior symptoms worsened, and she developed new symptoms, Claimant could not return to work. The WCJ accepted Dr. Lieberman's opinion that the EMG corroborated an aggravation, because she was more susceptible to irritation at the L5 level.

Section 422(a) of the Act requires the WCJ to issue a reasoned decision "containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. §834. "The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section." *Id.* A decision is reasoned for purposes of Section 422(a) if it allows for adequate appellate review. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003).

The Supreme Court has explained that unless a credibility assessment is tied to a witness's demeanor before the WCJ, "*some articulation of the actual objective basis* for the credibility determination must be offered for the decision to

12

be a 'reasoned' one which facilitates effective appellate review." *Daniels*, 828 A.2d at 1053 (emphasis added). "However, the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished" by the reasoned decision requirements of Section 422(a). *Green v. Workers' Compensation Appeal Board (US Airways)*, 155 A.3d 140, 147 (Pa. Cmwlth. 2017) (quoting *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1089 (Pa. Cmwlth. 1998)). "Such determinations are binding on appeal unless made arbitrarily and capriciously." *Green*, 155 A.3d at 147 (quoting *PEC Contracting Engineers*, 717 A.2d at 1089).

The WCJ's decision is reasoned. The WCJ summarized the testimony of each witness and all the medical reports, made credibility determinations based upon the record before him, explained the reasoning for his credibility determinations, and articulated an objective basis for his credibility determinations. The WCJ's decision allows for a meaningful appellate review. Simply, the WCJ credited the testimony of Dr. Lieberman and his explanation of Claimant's injury on March 23, 2021.

For the reasons set forth above, we affirm the adjudication of the Board.


_____
MARY HANNAH LEAVITT, President Judge Emerita


Judge Fizzano Cannon and Judge Dumas did not participate in the decision in this case.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chester County Hospital and     :
Babb Absence & Safety Integrated   :
Services (BASIS), Inc.,            :
             Petitioners     :
                                :
           v.              :    No. 1345 C.D. 2022
                                :
Eileen Bangert (Workers'        :
Compensation Appeal Board),    :
             Respondent    :

# **O R D E R**

AND NOW, this 29th day of January, 2024, the adjudication of the

Workers' Compensation Appeal Board dated November 8, 2022, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita